No. 22-13444-AA

In the

# United States Court of Appeals
## for the Eleventh Circuit

Christopher Baughcum, Jr., et al.,

*Plaintiffs/Appellants*,

v.

Genola Jackson, et al.,

*Defendants/Appellees*.

On Appeal from the United States District Court for the
Southern District of Georgia, Dublin Division.
No. 3:21-cv-00036 — Hon. Dudley H. Brown, *Judge*

**BRIEF OF DEFENDANT/APPELLEE CHRIS WRIGHT**

Christopher M. Carr
  *Attorney General of Georgia*
Beth Burton
  *Deputy Attorney General*
Tina M. Piper
  *Senior Asst. Attorney General*
Deborah Nolan Gore
  *Assistant Attorney General*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3289
dgore@law.ga.gov
*Counsel for*
*Defendant/Appellee Wright*

Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.

No. 22-13444-AA

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Baughcum, Christopher Jr., Plaintiff/Appellant

Bergstrom, William V., Counsel for Plaintiffs/Appellants

Bowen, Hon. Dudley H., United States District Judge

Burton, Beth, Deputy Attorney General, Counsel for Defendant/Appellee Chris Wright

Carr, Christopher M., Attorney General, Counsel for Defendant/Appellee Chris Wright

Cooper & Kirk, PLLC, Counsel for Plaintiffs/Appellants

Epps, Hon. Brian K., United States Magistrate Judge

Firearms Policy Coalition, Inc., Plaintiff/Appellant

Gore, Deborah Nolan, Assistant Attorney General, Counsel for Defendant/Appellee Chris Wright

Jackson, Genola, Defendant/Appellee

John Monroe Law, P.C., Counsel for Plaintiffs/Appellants

Long, Sophie, Defendant/Appellee

Martin, Kathryn B., Defendant/Appellee

Meyers, Zane, Plaintiff/Appellant

Monroe, John R., Counsel for Plaintiffs/Appellants

Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.
No. 22-13444-AA

Patterson, Peter A., Counsel for Plaintiffs/Appellants

Piper, Tina, Senior Assistant Attorney General, Counsel for
  Defendant/Appellee Chris Wright

Spires, Janice D., Defendant/Appellee

Thompson, David H., Counsel for Plaintiffs/Appellants

Waymire, Jason C., Counsel for Defendants/Appellees Jackson,
  Spires, and Martin

Williams, Morris & Waymire, LLC, Counsel for
  Defendants/Appellees Jackson, Spires, and Martin

Wright, Chris, Defendant/Appellee

        /s/ *Deborah Nolan Gore*
        Deborah Nolan Gore

C-2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Chris Wright does not request oral argument in this case. The facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ................................................. i

Table of Authorities ..................... **Error! Bookmark not defined.**

Statement of Issues ........................................................................ 1

Introduction ................................................................................. 2

Statement of the Case .................................................................... 3

    A. Factual Background ............................................................. 3

        1. Statutory Framework ................................................. 3

        2. The Parties and Plaintiffs' Complaint ....................... 6

    B. Proceedings Below ............................................................. 8

    C. Standard of Review ............................................................ 8

Summary of Argument ................................................................... 9

Argument .................................................................................... 10

    I. Plaintiffs lack standing to pursue their claims against
       Commissioner Wright. ...................................................... 10

       A. Plaintiffs' alleged injury is not fairly traceable to
          Commissioner Wright. ................................................ 12

       B. Plaintiffs cannot show redressability. .......................... 22

    II. This Court should not address the merits of Plaintiffs'
        Second Amendment claims. ............................................... 24

Conclusion .................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Wright,*
    468 U.S. 737 (1984) .......................................................10, 11, 12

*Cordoba v. DIRECTV, LLC,*
    942 F.3d 1259 (11th Cir. 2019) .................................. 12

*Dean Witter Reynolds, Inc. v. Fernandez,*
    741 F.2d 355 (11th Cir. 1984) ...............................................25, 26

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ...........................................................29, 30

*Friends of the Earth v. Laidlaw Environmental Servs.,*
    528 U.S. 167 (2000) .................................................... 11

*Ga. Republican Party v. SEC,*
    888 F.3d 1198 (11th Cir. 2018) .................................. 12

*Henne v. Wright,*
    904 F.2d 1208 (8th Cir. 1990) ...............................................20, 21

*Hormel v. Helvering,*
    312 U.S. 552 (1941) ................................................... 27

*Jacobson v. Fla. Sec'y of State,*
    974 F.3d 1236 (11th Cir. 2020) .........................................*passim*

*JW v. Birmingham Bd. of Educ.,*
    904 F.3d 1248 (11th Cir. 2018) .................................. 23

*Lewis v. Governor of Ala.,*
    944 F.3d 1287 (11th Cir. 2019) .................................. 23

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty.,*
    148 F.3d 1231 (11th Cir. 1998) .................................. 23

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................. 12

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014)................................................. 29

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) ............................................................. 29

*Nat'l Council for Adoption v. Blinken*,
   4 F.4th 106 (2021) ................................................................... 29

*NRA v. Swearingen*,
   2021 U.S. Dist. LEXIS 117837 (N.D. Fla. June 24,
   2021) ........................................................................................ 28

*Ochran v. United States*,
   117 F.3d 495 (11th Cir. 1997) .......................................26, 28, 29

*Sierra v. City of Hallandale Beach*,
   996 F.3d 1110 (11th Cir. 2021) .................................................. 8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................. 11

*Texas Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ...............................................19, 20

*United Pub. Workers v. Mitchell*,
   330 U.S. 75 (1947) ................................................................... 11

## Statutes

42 U.S.C. § 1983........................................................................... 7

O.C.G.A. § 16-11-125.1(2.1) .................................................... 6, 22

O.C.G.A. § 16-11-126(a)–(f).......................................................... 5

O.C.G.A. §§ 16-11-126(g), (h) (2021)............................................ 5

O.C.G.A. § 16-11-129 ...............................................................*passim*

O.C.G.A. § 16-11-129(a)(1)........................................................ 4, 13

O.C.G.A. § 16-11-129(a)(2)(B) ....................................................... 16

O.C.G.A § 16-11-129(a)(3)(b)(iii)................................................... 13

O.C.G.A. § 16-11-129(a)-(d)(1) ...................................................... 18

O.C.G.A. § 16-11-129(b.1), (j)......................................................... 5

O.C.G.A. §§ 16-11-129(b)(2)(A), § 16-11-126(g) .............................. 6

O.C.G.A. § 16-11-130 ...................................................................... 5

O.C.G.A. § 16-11-137 ..................................................................... 22

O.C.G.A. § 16-11-138 ....................................................................... 6

## Other Authorities

U.S. Const. amend. II ...............................................................*passim*

U.S. Const. amend. XI ................................................................... 27

Fed. R. App. Proc. 32(a)(7)(B) ........................................................ 1

Ga. Const. Art. I, Section I, Para. VIII.......................................... 15

# STATEMENT OF ISSUES

To establish Article III standing, a plaintiff must demonstrate that his or her alleged injury is fairly traceable to the actions of the defendant and likely to be redressed by a favorable ruling against that defendant. Plaintiffs here, three individuals under the age of 21 who seek a Georgia weapons carry license and an organization with similar members who share the same desire, filed suit against the Commissioner of the Georgia Department of Public Safety, challenging, on Second Amendment grounds, provisions of the Georgia Code which render most 18-to-20-year olds ineligible for a license, claiming they were injured by their inability to obtain a license due to their age. Do Plaintiffs lack Article III standing to bring their claims against the Commissioner, who has no role in determining an applicant's eligibility for a license or in issuing (or denying) such licenses?

## INTRODUCTION

With limited exception, Georgia law provides that individuals under the age of 21 are ineligible for a weapons carry license and, accordingly, cannot lawfully carry a loaded firearm in public. The same statutory scheme assigns responsibility for the licensing process—reviewing license applications, investigating applicants to determine eligibility, and issuing (or not issuing) licenses based on that determination—solely to judges of the county probate courts. Neither the Department of Public Safety nor its Commissioner has any role in this process. The Department does not review completed license applications, make eligibility determinations, or issue or deny licenses. It has only the very narrow and limited task of providing blank license application forms to the county probate courts free of charge.

Plaintiffs, all between the ages of 18 and 21, nonetheless sued the Commissioner, challenging Georgia's age restriction on Second Amendment grounds and complaining that they cannot obtain a license due of their age. The district court dismissed Plaintiffs' claims against him, holding that the denial of weapons carry licenses to people under the age of 21 is the province of county probate judges alone and is not fairly traceable to the Commissioner or the Department. Plaintiffs challenge this holding

on appeal, arguing that, by supplying blank license application forms which elicit information on an applicant's age, the Commissioner is sufficiently causally connected to their injury to support standing and that an injunction requiring him to change the wording of the form would redress their injury.

But this cannot possibly be the case, because probate judges, not the Commissioner, are statutorily responsible for determining license eligibility and issuing licenses. And Plaintiffs cannot show that a probate judge's decision to grant or deny an application is in any way dependent upon the wording of license application forms. Nor can they demonstrate that an injunction requiring the Commissioner to change the language of the forms would likely result in probate judges ignoring their statutory duty and issuing licenses to Plaintiffs, despite their ineligibility. The district court correctly dismissed the Commissioner for lack of standing, and this Court should affirm.

## STATEMENT OF THE CASE

### A. Factual Background

#### 1. Statutory Framework

Georgia law provides a process by which residents can apply for a weapons carry license. That process is governed by O.C.G.A.

3

§ 16-11-129. Individuals seeking to obtain a license must submit an application to a judge of a county probate court who, upon investigation of the applicant's eligibility, determines whether to issue (or not issue) a weapons carry license to the applicant. O.C.G.A. § 16-11-129(a)(1).

The Georgia Department of Public Safety, of which defendant Col. Chris Wright serves as Commissioner, has no role in this determination and no authority over the issuance or denial of a license. *Id.* It is tasked solely with "furnish[ing] application forms and license forms … to each judge of each probate court within this state at no cost." *Id.* at (a)(2)(C)(iii).

Subsection (b)(2) of § 16-11-129 sets forth circumstances in which an individual is ineligible to receive a weapons carry license. Of relevance here, it provides that "[n]o weapons carry license shall be issued to … [a]ny person younger than 21 years of age…." *See id.* at (b)(2)(A). An exception to this age requirement exists for those who have completed basic training in the armed forces of the United States and are actively serving or have been honorably discharged. *Id.* Such individuals may, if otherwise qualified, obtain a license if at least 18 years of age. *Id.*[1] In the

---

[1] There are numerous circumstances in which a loaded handgun may be lawfully possessed or carried by individuals aged 18 to 20

event that a license is denied by the probate judge, the applicant may request a hearing before such judge regarding his or her fitness to be issued a license or may bring an action in mandamus. *See* O.C.G.A. § 16-11-129(b.1), (j). Neither the Department nor the Commissioner has any role in this review process. *Id.*

In 2021, when this lawsuit was filed, a Georgia weapons carry license was generally required to lawfully carry a loaded handgun in public. *See* O.C.G.A. §§ 16-11-126(g), (h) (2021). Following statutory amendments which took effect in 2022, that is no longer the case. Now, individuals may lawfully carry a firearm in public if they meet the definition of a "lawful weapons carrier." *See id.* (2022). Lawful weapons carriers include, inter alia, individuals who are "licensed *or eligible for a license* pursuant to § 16-11-129 and who [are] not otherwise prohibited by law from possessing a

---

who do not qualify for this exception. *See* O.C.G.A. § 16-11-126(a)–(f). They may, for instance, carry on their property, or inside their "home, motor vehicle, or place of business." *Id.* at § 16-11-126(a). A person under 21 with a valid hunting or fishing license may also carry a loaded handgun while hunting, fishing, or engaged in sport shooting. *Id.* at § 16-11-126(f)(1). And loaded long guns may be carried in public by those not prohibited by law from possessing a weapon if carried in an open and fully exposed manner. *Id.* at § 16-11-126(b). Additional exceptions from Georgia's licensing requirements for individuals employed in certain public offices are set forth in § 16-11-130.

weapon or long gun." O.C.G.A. § 16-11-125.1(2.1) (emphasis added). Because 18-to-20-year-olds who have not completed basic training remain ineligible for a license, they are not "lawful weapons carriers" and are still unable to lawfully carry in public (subject to exceptions noted above). *See* O.C.G.A. §§ 16-11-129(b)(2)(A), § 16-11-126(g) (a person who carries a weapon when not a "lawful weapons carrier" commits the offense of "unlawful carrying of a weapon," with a first offense punishable as a misdemeanor).

### 2.    The Parties and Plaintiffs' Complaint

Plaintiffs include an organization, Firearms Policy Coalition, Inc., and three individuals, Christopher Baughcum Jr., Zane Meyers, and Sophie Long. Doc. 1. The individual plaintiffs, all Georgia residents over the age of 18, wish to carry a loaded firearm in public but, because they are under 21 and have not completed basic training in the armed forces, they cannot lawfully do so. *Id.* ¶¶ 18-20, 41-42, 56-57, 71-72. All three aver that, but for the age requirement in § 16-11-129, they would be eligible for a weapons carry license. *Id.* ¶¶ 41, 56, 71. Firearms Policy Coalition alleges that its purpose includes "defending the individual Second Amendment right to bear arms." *Id.* ¶ 21. It purports to have numerous members, including the individual plaintiffs, who are

6

between the ages of 18 and 20, reside in Georgia, and have been similarly precluded from obtaining a license and lawfully carrying a firearm in public due to the age requirement in Georgia law. *Id.*

Plaintiffs filed suit under 42 U.S.C. § 1983, naming as defendants the Commissioner along with three county probate judges. They alleged that the Commissioner "enforces" Georgia's age restriction by furnishing probate judges with blank license application forms which elicit an applicant's age and other information pertinent to license eligibility. *Id.* ¶ 25. And they brought two claims against him under 42 U.S.C. § 1983. The first, a Second Amendment claim, asserted that the provisions of §§ 16-11-126 and 16-11-129 that preclude most 18-to-20-year-olds from eligibility for a weapons carry license are unconstitutional facially and as applied to Plaintiffs and others similarly situated. *Id.* ¶¶ 90-100. The second asserts that the same provisions are unconstitutional under the Second Amendment as applied to 18-to-20-year old women, including plaintiffs Long and FPC. *Id.* ¶¶ 101-108. The complaint sought relief in the form of a declaration that the challenged statutory provisions are unconstitutional and an injunction barring enforcement of the provisions against them and those similarly situated. *Id.* at 22-23.

Plaintiffs also sought nominal damages, attorney's fees, and costs. *Id.* at 23.

## B.  Proceedings Below

Commissioner Wright moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that Plaintiffs could not meet the traceability and redressability requirements of Article III standing. Docs. 17, 17-1, 24. Plaintiffs opposed the motion and filed a "cross-motion" for summary judgment as to all defendants. Docs. 20, 20-2. The district court granted the Commissioner's motion to dismiss, holding that "the denial of licenses to persons under the age of 21 is not fairly traceable to Defendant Wright's conduct" and that, accordingly, "Plaintiffs do not have standing to sue" him. Doc. 40, at 6-7. In a subsequent order, the court dismissed the remaining probate judge defendants for lack of standing and terminated all pending motions, including Plaintiffs' cross-motion for summary judgment. Doc at 8.

## C.  Standard of Review

A district court's dismissal for lack of standing is reviewed de novo. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021).

## SUMMARY OF ARGUMENT

The district court correctly held that Plaintiffs did not have standing to sue the Commissioner and that, accordingly, the court lacked Article III jurisdiction over Plaintiffs' claims against him. Plaintiffs cannot establish either traceability or redressability.

*First*, Plaintiffs' alleged injury—an inability to obtain a weapons carry license due to their age—is not fairly traceable to the Commissioner. Neither the Commissioner nor the agency over which he presides, the Department of Public Safety, is responsible for investigating applicants for weapons carry licenses, for determining whether an applicant is eligible under the statute, or for issuing or denying licenses. Those tasks are specifically and exclusively assigned to the county probate judges. The sole responsibility of Department as it relates to licenses is to provide county probate courts with application forms free of charge.  And while those applications contain blanks which elicit information on eligibility, including an applicant's age, Plaintiffs cannot show that the decision of a probate judge to grant or deny an application is in any way dependent upon or caused by the contents or wording of the application forms. Plaintiffs' alleged injury is not caused, directly or indirectly, by the application forms, and it is

9

not traceable to the Commissioner. The claims against him were properly dismissed for lack of standing.

*Second*, although the district court did not reach the issue, Plaintiffs cannot show that relief against the Commissioner is likely to redress their injury. Plaintiffs assert that an order requiring the Commissioner to remove or change the language that elicits information on an applicant's age would redress their injury. But probate judges are statutorily required to deny a license application to an applicant under the age of 21 who has not completed basic training in the armed forces, regardless of whether the application form elicits that information. And nothing in the records suggests that probate judges would simply dispense with their duty to investigate and enforce Georgia's statutory age restrictions if the application form did not elicit such information or was otherwise changed.

## ARGUMENT

### I.    Plaintiffs lack standing to pursue their claims against Commissioner Wright.

Article III of the Constitution requires that federal courts adjudicate only actual "cases" or "controversies." *See, e.g., Allen v. Wright*, 468 U.S. 737, 750 (1984). This requirement "defines with respect to the Judicial Branch the idea of separation of powers on

which the Federal Government is founded." *Id*. Among the doctrines that limit federal courts to resolving only "cases" or "controversies," Article III standing "is perhaps the most important." *Id*. It ensures the federal judiciary does not "intrude upon powers vested in the legislative or executive branches" by issuing advisory opinions not founded upon a controversy between truly adverse parties. *United Pub. Workers v. Mitchell*, 330 U.S. 75, 90 (1947).

To establish standing, a plaintiff must demonstrate "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Friends of the Earth v. Laidlaw Environmental Servs.*, 528 U.S. 167, 180-82 (2000). At the pleading stage, a plaintiff bears the burden of "'clearly … alleg[ing] facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U. S. 490, 518 (1975)). Standing is a jurisdictional issue, and these elements are "not mere pleading requirements, but rather an indispensable part of the plaintiff's case." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1201 (11th Cir. 2018).

11

Here, the district court held that Plaintiffs lacked standing to pursue their claims against the Commissioner because their alleged injury—an inability to obtain a weapons carry license—is not fairly traceable to him. That holding is correct. But an absence of traceability is not the only reason Plaintiffs lack standing. Their claims against the Commissioner also fail to satisfy Article III's redressability requirement, and this Court could also affirm the dismissal on this alternative ground.

### A.    Plaintiffs' alleged injury is not fairly traceable to Commissioner Wright.

Article III standing includes a causation requirement—"there must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560-561. To satisfy this requirement, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant." *Id.* at 560. While a traceability showing need not rise to the level of proximate causation, *see Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019), the injury must be a result of the conduct of the defendant and not "the result of the independent action of some third party." *Lujan*, 504 U.S. at 560. *See also Allen v. Wright*, 468 U.S. 737, 752 (1984) (asking whether "the line of causation"

12

between the defendant's conduct and the injury is "too attenuated" to support standing). This requirement is not met here.

Section 16-11-129 of the Georgia Code governs weapons carry licenses, and it ascribes to the Department of Public Safety a single and very limited task—to "furnish application forms and license forms required by this Code section." O.C.G.A § 16-11-129(a)(3)(b)(iii). That is the full extent of the Department's involvement in the licensing process—providing blank forms to county probate courts. The law does not task the Department or its Commissioner with reviewing completed license applications, or determining which applicants meet Georgia's licensing requirements and which do not, or issuing or not issuing licenses to any applicant. The legislature clearly and specifically assigned those responsibilities to the judges of the county probate courts. *See* O.C.G.A. § 16-11-129(a)(1). It is they who determine, "on investigation of the applicant pursuant to subsections (b) and (d)" of § 16-11-129, whether to issue or deny a license. *Id.*

The Department likewise has no role in the statutory process for challenging the denial of a license. Again, that role falls exclusively to the judiciary. Relief from a license denial may only be sought by an action for mandamus or other legal proceeding in superior court or by requesting a hearing before the judge of the

probate court regarding the applicant's fitness to be issued a license. *Id.* at (j).

Plaintiffs nonetheless contend that their injury is traceable to the Commissioner because the forms provided by the Department contain a blank space for applicants to enter their date of birth and the language "Age if < 21:____ + attach proof of completed basic training or honorable discharge." *See* Doc. 20-8 at 2. But the problem for Plaintiffs is this: they cannot show that including this language on the form causes probate judges to deny licenses. Surely, if the Commissioner removed the "date of birth" blank from application forms, probate judges would not simply ignore their statutory duty to enforce the age requirement set forth in § 16-11-129(b) and issue licenses to applicants regardless of age. The same is true of the language about attaching proof of basic training. If the form did not contain such language, would probate judges then issue licenses to applicants between the ages of 18 and 20 who never completed basic training, despite their clear ineligibility under the statute? The answer has to be no. Rather, as Plaintiffs seemingly acknowledge elsewhere in their brief (correctly citing the statute, not the application form), probate judges would "certainly" deny them a license "because they are under 21 years old" and because probate judges "are required by

law to deny applications of any 18-to-20-year-old who applies without proof of military service." App. Br. at 11-12, 19. The application forms are simply not the reason, or even *a* reason, Plaintiffs are unable to obtain a license.[2]

Perhaps recognizing as much, Plaintiffs characterize their injury not only as an inability to *obtain* a license, but also an inability even to *apply* for one. They contend that, by including age-related inquiries on the application form, the Commissioner "creates an obstacle to application" and makes it "impossible" for them to apply. Their attempt to gin up traceability in this manner fails. As an initial matter, nowhere in their complaint do Plaintiffs allege they are unable to apply for a license, much less describe their injury in such terms. *See generally*, Doc. 1. Regardless, nothing in the statute precludes Plaintiffs from applying.[3] To be

---

[2] Nor could they be. Under the Georgia Constitution, the General Assembly has express authority to "prescribe the manner in which arms may be borne." Ga. Const. Art. I, Section I, Para. VIII. The General Assembly established a framework which provided county probate courts, not the Department or its Commissioner, with authority to investigate license applications, determine eligibility, and issue (or not issue) licenses as set forth in O.C.G.A. § 16-11-129. The wording of the application cannot control who obtains a weapons carry license without running afoul of the legislature's prescription.

[3] *See* O.C.G.A. § 16-11-129(a)(2)(B) (providing only that "[a]pplicants shall submit the application for a weapons carry

sure, upon investigation by a probate judge, the application would presumably be denied for failure to meet the age requirements of § 16-11-129(b). But it is this denial, not a purported inability to submit an application for consideration, which constitutes Plaintiffs' injury.

This Court has rejected a claim of traceability in circumstances far less obvious than here. In *Jacobson v. Fla. Sec'y of State*, this Court examined a Florida statute which required the candidate of the party that won the last gubernatorial election to appear first beneath each office listed on the ballot, with the candidate of the second-place party appearing second. 974 F.3d at 1242. The law tasked county supervisors with placing candidates on the ballot in the correct order. *Id.* at 1244. The plaintiffs sued Florida's "chief election officer," the Secretary of State, challenging the constitutionality of the law and contending they were injured because Republicans, not Democrats, appeared first on the ballot in Florida's general elections. *Id.* at 1253. The district court held that the plaintiffs had standing to sue the Secretary, but this Court reversed. Addressing the issue of traceability, the court

_____

license or renewal license to the judge of the probate court on forms prescribed and furnished free of charge to persons wishing to apply for the license or renewal license.").

observed that "[t]he problem for the [plaintiffs] is that Florida law tasks [county] Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute." *Id*. And, the Court continued, "the [county] Supervisors are independent officials under Florida law who are not subject to the Secretary's control." *Id.* Under such circumstances the plaintiffs could not, the court concluded, meet Article III's traceability requirement as to the Secretary.[4] *Id*.

The same is even more clearly true here. Georgia law provides county probate judges, not the Department or its Commissioner, with the authority to determine whether to issue or deny weapons licenses to applicants. *See* O.C.G.A. § 16-11-129(a)-(d)(1). And, as in *Jacobson*, county probate judges are not subject to the

---

[4] Notably, in *Jacobson*, the Secretary of State had a considerably larger role in the statutory scheme at issue than the Commissioner has here. The Secretary had authority to "prescribe rules and issue directives about ballot order" and "ballot layout" which, as the Eleventh Circuit observed, "the [county] Supervisors might well be obliged to follow." *Id*. at 1256-57. Nonetheless, the court found this insufficient to "make[] the order in which candidates appear on the ballot traceable to her," noting that such circumstances "say[] nothing about whether she 'possess[es] authority to enforce the complained-of provision,' as the causation element of standing requires." *Id*. (emphasis in original).

17

Commissioner's control. Rather, they are bound by the statutory language: probate judges "shall," upon investigation of applicants to determine statutory eligibility, issue licenses to eligible applicants and deny licenses to ineligible applicants. *Id.* at (a)(1). And Plaintiffs point to no law or evidence even suggesting, much less showing, that a judge's decision is affected by the wording of application forms. As in *Jacobson*, their injury is "the result of the independent action of some third party." *Jacobson*, 957 F.3d at 29. It is not fairly traceable to Commissioner Wright.

Plaintiffs' argument to the contrary—i.e., that *Jacobson* does not preclude a finding of traceability here—is unpersuasive. Likening the Commissioner to the county officials in *Jacobson* rather than the Secretary of State, Plaintiffs argue that he "is the sole official responsible for creating the forms by which Plaintiffs must apply for carry licenses." But to establish standing for their claims, Plaintiffs must show that the *denial of licenses*, not the creation of forms, is traceable to the Commissioner. The fact that the Commissioner has authority over the creation of application forms says nothing about whether he has authority to deny a license, which is the injury alleged here. And, as shown, he does not.

18

Plaintiffs point to two out-of-circuit cases they contend support a finding of traceability here, but neither does. The first, *Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020), involved a challenge to a Texas statute that allowed all voters 65-and-older to vote by mail but required younger voters to satisfy conditions in order to do so. 978 F.3d at 174. The court held the that Secretary of State, who had the duty to design the application form for mail-in ballots (which included voter eligibility categories) and provide them to local authorities, was sufficiently connected to the claimed injury to support standing. *Id.* at 179-80. But the local officials in *Texas Democratic Party* were not only required to use the Secretary's form; the Secretary "ha[d] the authority to compel or constrain local officials" based on what she included on the form. *Id.* at 180. The application form was, in other words, decisive. Not so here. Plaintiffs have identified no duty of the Commissioner, and nothing about the license application forms the Department provides to county probate courts, which compels or constrains probate judges with respect to issuing licenses. And, of course, the application forms do no such thing.

Plaintiffs next point to *Henne v. Wright*, 904 F.2d 1208 (8th Cir. 1990), for support, but it, too, provides none. The case

19

involved a constitutional challenge to a state statute which restricted the choice of surnames that could be entered on a birth certificate. 904 F.2d at 1209. Charged with implementing the restriction, the state Department of Health prepared birth certificate forms and provided the forms to hospitals, along with "instructions by which hospital personnel … effect[ed] the surname restrictions." *Id*. at 1211. The Department argued that the plaintiffs lacked standing because the alleged injury—the plaintiffs' inability to choose a surname not authorized by the statute for their newborns—resulted not from its conduct but from that of the hospital personnel who filled out the forms. *Id*. The court disagreed, holding it was the Department that was statutorily responsible for enforcing the challenged restriction and observing that the hospital employees were merely "acting upon instructions from the Department." *Id*. at 1210-1211. Here, in contrast, the Commissioner does not enforce the challenged age restriction by providing forms; it is enforced by the probate court judges who are statutorily charged with determining license eligibility and who most definitely do not act on the Commissioner's instructions. *Henne* is inapplicable.

Finally, to the extent Plaintiffs characterize their injury as an inability to lawfully carry a firearm in public,[5] traceability to the Commissioner fails for the additional reason that, since the 2022 amendments, a weapons carry license is no longer required to do so. *See* O.C.G.A. §§ 16-11-125.1(2.1); 16-11-126(f). It follows that a license application form—the very thing on which Plaintiffs rely in attempting to connect the Commissioner to their injury—is no longer required. Indeed, Plaintiffs aver that they have standing to sue the Commissioner because he "provides the forms by which they must apply" for a license. App. Br. at 9. But it is no longer true that residents "must" apply for a license in order to lawfully carry in public. They need only be eligible for one. And Plaintiffs' "ineligibility" for a license is certainly not caused by, or even connected to, the wording of application forms.[6]

---

[5] In the complaint, Plaintiffs complain not only that they are "precluded from obtaining a weapons license," but that they are accordingly "prohibit[ed] … from carrying a loaded handgun in public for general self-defense" without being subject to arrest. *See* Doc. 1, ¶¶ 47-49, 62-64, 77-79.

[6] Plaintiffs' argument that the 2022 amendments "provide an additional basis for standing against the Commissioner" makes no sense. They claim that an injunction against the Commissioner would now have the added benefit of "preventing the Georgia State Patrol [a division of the Department] from arresting Plaintiffs were they to carry without a license."

## B.   Plaintiffs cannot show redressability.

In assessing the third component of Article III's standing requirement—redressability—courts ask "whether a decision in a plaintiff's favor would 'significant[ly] increase . . . the likelihood' that she 'would obtain relief that directly redresses the injury' that she claims to have suffered." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010)). It requires that it be "likely, as opposed to merely speculative," that the plaintiff's injuries would be redressed by a favorable decision against the defendant. *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1253 (11th Cir. 1998). And it must be the effect of the court's

Plaintiffs do not explain why this purported "risk of arrest" exists now but did not exist prior the amendments, when they filed their complaint and when, like now, they could not lawfully carry in public. Regardless, the scenario Plaintiffs imagine (i.e., that they *may* decide to unlawfully carry a firearm in public, and they *could possibly* be arrested while doing so, and the arresting officer *could possibly* be a member of the Georgia State Patrol) amounts to a string of highly speculative contingencies, to say the least. It is even more speculative in light of the fact that state law prohibits law enforcement officers from detaining individuals for the sole purpose of investigating whether they are lawful carriers. *See* O.C.G.A. § 16-11-137. Speculative injury cannot confer standing. *See, e.g., JW v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) ("if future injury is based on the occurrence of a random or unauthorized act, then the injury is 'too speculative' for standing purposes").

judgment on the defendant, not on some third party, that directly or indirectly redresses the plaintiff's injury. *Lewis*, 944 F.3d at 1301 (11th Cir. 2019). This standard cannot be met here.

Plaintiffs contend (in a wholly conclusory manner) that "[i]f the Commissioner were enjoined to change the forms to note that 18-to-20-year-olds are eligible for carry licenses like all other adults," their injury would be redressed. App. Br. at 12. But they do not even attempt to explain how or why this is so. Nor can they, because, as shown, probate judges are statutorily charged with determining an applicant's eligibility based on the disqualifiers set forth in the statute, not based on the wording of forms provided to them by the Department. And there is nothing in the record to suggest that judges would simply ignore the law and issue licenses to those under 21 if the application forms were changed in the manner Plaintiffs suggest. *Cf. Jacobson*, 974 F.3d at 1255 (holding the redressability requirement of standing was not met because the plaintiffs did not show that declaratory relief against the Secretary would "significantly increase the likelihood" that county supervisors would ignore state law regarding how names should appear on ballots and arrange them in the manner sought by the plaintiffs). Plaintiffs cannot show that an order requiring the Commissioner to alter application forms would

"significantly increase the likelihood" that they could obtain a carry license and lawfully carry a firearm in public. Thus, they cannot show that such an order would redress their alleged injury. For this additional reason, Plaintiffs lack standing to sue the Commissioner.

## II. This Court should not address the merits of Plaintiffs' Second Amendment claims.

Plaintiffs ask this Court, should it find that the district court's dismissal of the Commissioner for lack of standing was in error, to take up the merits of their Second Amendment claims against him rather than remand the case for the district court to do so in the first instance. They base their highly unusual request on the contention that this case falls within an exception to the general rule that an appellate court "will not consider a legal issue or theory unless it was presented to the trial court." *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-361 (11th Cir. 1984). But it is not clear this general rule (much less any exceptions to it) even applies here. Plaintiffs are not asking the Court to consider a legal issue, theory, or argument not raised below. They are asking the Court to rule on claims for relief against the Commissioner never reached by the district court because it lacked jurisdiction over him. Plaintiffs do not cite a

24

single case in which this Court reversed on a threshold ground, like standing, and then proceeded to consider and rule on the merits of the plaintiffs' claims despite the district court never having reached them.

Even assuming the general rule that issues not raised below will not be considered on appeal applies in circumstances like these, this case does not fall within an exception to it. Appellate courts will deviate from that general rule only in "certain exceptional" and "compelling circumstances," such as when the case "involves a pure question of law and [] refusal to consider it would result in a miscarriage of justice," where the proper resolution is "beyond any doubt," and where the issue presents significant questions of "great public concern" or "the interest of substantial justice is at stake." *Dean Witter*, 741 F.2d at 360-361; *Ochran v. United States*, 117 F.3d 495, 503 (11th Cir. 1997). Suffice it to say, this is not such a case.

First, it is simply not true that "this case poses a pure question of law" and that "no factual development is needed, just legal analysis," as Plaintiffs contend. The case includes as-applied claims for nominal damages against the Commissioner in his individual capacity. Doc. 1 at 17, 20. And those claims necessarily involve questions of fact on which the defendants are entitled to

discovery should the district court's dismissal be reversed and should the Commissioner be required to answer the complaint.[7] *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941) (the rule that appellate courts will not reach the merits of an issue not ruled on below is "essential in order that litigants may not be surprised on appeal by [a] final decision there of issues upon which they have had no opportunity to introduce evidence.").[8]

Second, the "the proper resolution" of the case is not "beyond any doubt." Even focusing solely on the question of whether the Second Amendment bars Georgia from prohibiting 18-to-20-year-olds without basic training from carrying firearms in public, as Plaintiffs do, they point to no controlling authority clearly

---

[7] The Commissioner is not required, for example, to accept as true for all purposes the allegations in the complaint that Plaintiffs "ha[ve] never been charged with nor convicted of any misdemeanor or felony offense" or that they are "otherwise fully eligible for a weapons carry license and ha[ve] no history of violent behavior or other conduct that would pose any threat or danger to the public." *Id*. ¶¶ 18-20, 50, 65.

[8] Nor is resolution of this case limited, as Plaintiffs also contend, to answering the question of whether 18-to-20-year-olds have a Second Amendment right to carry in public. Even if they had standing to sue the Commissioner, he would be entitled to raise—and would raise—the defenses of qualified immunity and, to the extent the claim for damages is brought against him in his official capacity, of Eleventh Amendment immunity to Plaintiffs' claims for damages.

answering that question. They simply state that "[t]he text of the Second Amendment and the history of lawful regulation of carriage in our country confirm beyond any doubt that the answer must by 'yes'." App. Br. at 25. But as Plaintiffs are well aware, the question has never been passed upon by this Court or the Supreme Court. *See NRA v. Swearingen*, 2021 U.S. Dist. LEXIS 117837 (N.D. Fla. June 24, 2021) (on appeal) (observing that the question of whether the purchase of firearms by 18-to-20-year-olds is protected by the Second Amendment is "difficult" and, after undertaking an analysis of history and longstanding traditions, holding that it is not).

Third, considerations of prejudice and concern for judicial economy do not support Plaintiffs' position. The substantive issues raised by their Second Amendment claims were not, as Plaintiffs contend, "fully briefed to the District Court." The Commissioner only briefly touched on the merits of those claims in responding to Plaintiffs' pre-discovery, pre-answer motion for summary judgment (filed during the pendency of the Commissioner's motion to dismiss), and he did not address the merits at all in his motion to dismiss for lack of standing. *Compare Ochran*, 117 F.3d at 503 (exercising discretion to consider an issue not addressed in the district court where the parties fully briefed it on appeal, the court

27

and parties "expended a considerable about of time" analyzing the issue in their briefs and at oral argument, and proper resolution of the issue was beyond any doubt). And, unlike in the case on which Plaintiffs rely, the Commissioner opposes consideration of the merits of Plaintiffs' claims for the first time on appeal. *Compare id.* (opting to address an argument not passed on by the district court and stating, "[a]t the outset, we note that the government did not argue on appeal that we should not address [the appellant]'s argument").[9]

Fourth, Plaintiffs' point to no support for their contention that "the interest of substantial justice is at stake" simply because the case involves constitutional claims.

Finally, *Bruen* and *Heller* do not "demonstrate that it is proper for this Court to assess the merits even though the District Court did not." Indeed, neither case involved an appellate court addressing an issue not passed on by the district court. On the

---

[9] *Also compare Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014) ("The plaintiffs and the government fully briefed the issue before this court and requested that, if we find the plaintiffs have standing, we reach the merits of plaintiffs' claims."); *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 113-14 (2021) (addressing a "purely legal question" not reached below where "its answer [wa]s clear" and the parties agreed there was no harm in the appellate court addressing the issue rather than remanding).

28

contrary, in both of those cases, unlike here, the district court based its dismissal not on standing (or any other threshold issue), but on a holding that the challenged law did not violate the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) (the district court granted a motion to dismiss on grounds that the challenged statute, which limited gun licenses to applicants who demonstrated "proper-cause," did not violate the Second Amendment, the Second Circuit affirmed, and the Supreme Court reversed and remanded); *District of Columbia v. Heller*, 554 U.S. 570 (2008) (in challenge to laws that operated as a ban on handguns and prohibited the carrying a loaded firearm in the home, the district court granted the state's motion for judgment on the pleadings on grounds that the Second Amendment does not generally protect an individual right to possess a firearm outside of militia service, the circuit court reversed, and the Supreme Court affirmed the reversal).

The district court correctly held that Plaintiffs lack standing to pursue their claims against the Commissioner, and this Court should affirm. Nonetheless, should this Court reverse, the case should be remanded to the district court for consideration of the merits of Plaintiffs' claims.

## CONCLUSION

For the reasons set out above, this Court should affirm the judgment of the court below.

Respectfully submitted.

/s/ *Deborah Nolan Gore*
Christopher M. Carr
  *Attorney General of Georgia*
Beth Burton
  *Deputy Attorney General*
Tina M. Piper
  *Senior Asst. Attorney General*
Deborah Nolan Gore
  *Assistant Attorney General*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3289
dgore@law.ga.gov
*Counsel for*
*Defendant/Appellee Wright*

30

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure

because it contains 6,305 words as counted by the word-processing

system used to prepare the document.

/s/ *Deborah Nolan Gore*
Deborah Nolan Gore

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.


/s/ *Deborah Nolan Gore*
Deborah Nolan Gore