No. 22-13444

# In the United States Court of Appeals for the Eleventh Circuit

CHRISTOPHER BAUGHCUM,
JR., ET AL.,

*Plaintiffs–Appellants*,

v.

GENOLA JACKSON, ET AL.,

*Defendants–Appellees*.

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
NO. 3:21-CV00036-DHB-BKE

David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 220-9660
Fax: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

*Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.*,
No. 22-1344

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE REPORT

I certify that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Association County Commissioners of Georgia-Interlocal Risk Management Agency (ACCG-IRMA), *insurer for Defendant-Appellees Jackson, Spires, and Martin*

2. Baughcum, Christopher Jr., *Plaintiff-Appellant*

3. Bergstrom, William V., *Counsel for Plaintiffs-Appellants*

4. Bowen, Judge Dudley H., *District Court Judge*

5. Burton, Beth, Deputy Attorney General, *Counsel for Defendant-Appellee Wright*

6. Carr, Christopher M., Attorney General, *Counsel for Defendant-Appellee Wright*

7. Cooper & Kirk, PLLC, *Counsel for Plaintiffs-Appellants*

8. County Reinsurance, LTD, *reinsurer for ACCG-IRMA*

9. Epps, Magistrate Judge Brian K., *Magistrate Judge*

10. Firearms Policy Coalition, Inc., *Plaintiff-Appellant*

11. Gore, Deborah Nolan, *Counsel for Defendant-Appellee Wright*

12. Jackson, Genola, *Defendant-Appellee*

13. John Monroe Law, P.C, *Counsel for Plaintiffs-Appellants below*

*Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.*,
No. 22-1344

14. Long, Sophie, *Plaintiff-Appellant*

15. Martin, Kathryn B., *Defendant-Appellee*

16. Meyers, Zane, *Plaintiff-Appellant*

17. Monroe, John R., *Counsel for Plaintiffs-Appellants below*

18. Patterson, Peter A., *Counsel for Plaintiffs-Appellants*

19. Piper, Tina, Senior Assistant Attorney General, *Counsel for Defendant-Appellee Wright*

20. Spires, Janice D., *Defendant-Appellee*

21. Thompson, David H., *Counsel for Plaintiffs-Appellants*

22. Waymire, Jason C., *Counsel for Defendants-Appellees Jackson, Spires, and Martin*

23. Williams, Terry, *Counsel for Defendants-Appellees Jackson, Spires, and Martin*

24. Williams, Morris & Waymire, LLC, *Counsel for Defendants-Appellees Jackson, Spires, and Martin*

25. Wright, Chris, *Defendant-Appellee*


No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.*,
No. 22-1344

Dated: February 17, 2023            Respectfully submitted,

                                             /s/ David H. Thompson
                                             David H. Thompson

                                             *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ...............................................................................1

ARGUMENT .....................................................................................2

I.    Plaintiffs Have Standing. ................................................................2

    A. Plaintiffs' Have Standing to Sue the Probate Judges. ...............................2

    B. Plaintiffs Have Standing to Sue the Commissioner. ..................................8

    C. Plaintiffs' Claims Are Ripe. ..................................................14

II.   Plaintiffs' Claims Are Neither Moot Nor Barred By Any Form of Immunity..........................................................................15

III.  The Court Should Address the Merits of Plaintiffs' Claims. .......................20

CONCLUSION ...............................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

*ACLU v. The Florida Bar*, 999 F.2d 1486 (11th Cir. 1993)...................................8

*Allen v. Wright*, 468 U.S. 737 (1984) ...................................................4, 5

*Application of Dailey*, 465 S.E.2d 601 (W.V. 1995) ............................................18

*Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005) .........................................................3

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................................10

*Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370 (11th Cir. 2019).......15

*Comer v. Ross*, 28 S.E. 387, 387 (Ga. 1897) ......................................................18

*Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012)....................14

*Cross v. Ala. State Dep't of Mental Health & Mental Retardation*,
     49 F.3d 1490 (11th Cir. 1995)........................................................................20

*Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214 (5th Cir. 2009) ...................................18

*Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011).....................................................

*Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355 (11th Cir. 1984) .............21

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ................................................23

*Doe v. Virginia Department of State Police*, 713 F.3d 745 (4th Cir. 2013) ............4

*Firearms Pol'y Coal., Inc. v. McCraw*,
     --- F. Supp. 3d ----, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022).......23, 24

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
     344 F.3d 1263 (11th Cir. 2003)...................................................................10

*Forrester v. White*, 484 U.S. 219 (1988) ............................................................17

*Ga. Latino All. for Hum. Rights v. Gov. of Ga.*,
     691 F.3d 1250 (11th Cir. 2012)....................................................................13

*Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567 (11th Cir. 1992).................24

*Henne v. Wright*, 904 F.2d 1208 (8th Cir. 1990) .............................................12, 13

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ........................8

*In re Preis*, 573 A.2d 148 (N.J. 1990) ...........................................................17, 18

*In re Worldwide Web Sys., Inc.*,
     328 F.3d 1291 (11th Cir. 2003).....................................................................24

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) ................ 2, 10, 11

*Judd v. Haley*, 250 F.3d 1308 (11th Cir. 2001) ................................................ 21, 22

*Lamar v. 118 Jud. Dist. Ct. of Tex.*, 440 F.2d 383 (5th Cir. 1971) ........................ 20

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .................................. 15

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) .................................................. 21

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972) ................................................ 5

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005) .................. 6

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) .................................................................... 2, 23, 25

*Parker v. Dist. of Columbia*, 478 F.3d 370 (D.C. Cir. 2007) ................................. 7

*Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005) ............................................ 7

*Sibley v. Lando*, 437 F.3d 1067 (11th Cir. 2005) .................................................. 17

*Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260 (4th Cir. 2018) ............. 9, 10

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
    968 F.3d 738 (9th Cir. 2020) .................................................................... 22

*Socialist Workers Party v. Leahy*, 145 F.3d 1240 (11th Cir. 1998) ........................ 8

*Strickland v. Alderman*, 74 F.3d 260 (11th Cir. 1996) ........................................ 5, 6

*Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014) ...................................... 7, 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................................... 15

*Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989) ...................................................... 2, 3

*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) .................... 11, 12

*United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012) ......................................... 3

*United States v. Vosburgh*, No. 94-35635, 59 F.3d 177 (9th Cir. 1995) .................. 6

*Westco Corp. v. Sch. Dist.*, 6 F.3d 108 (3d Cir. 1993) .......................................... 15

*Wollschlaeger v. Gov. of Fla.*, 848 F.3d 1293 (11th Cir. 2017) ....................... 14, 15

## Constitutional and Statutory Provisions

O.C.G.A.
    § 5-3-2 ................................................................................................ 18, 19
    § 15-9-30 .................................................................................................. 18
    § 16-11-129(a)(1) ..................................................................................... 17

§ 16-11-129(b)(2) ........................................................16

§ 16-11-129(j)............................................................19

430 ILCS 65/2 ...........................................................17

Minn. Stat. Ann. § 624.714 ...........................................17

18 Pa. Cons. Stat. § 6109 .............................................17

Tex. Govt. Code Ann. § 411.174 ...................................17

## Other Authorities

Br. of United States as *Amicus Curiae*, *District of Columbia v. Heller*,
07-290, *available at* https://bit.ly/3S2xltC .................................................25

WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3531.5 (3d ed.) .........................10

## INTRODUCTION

Georgia's system for granting carry licenses for firearms is implemented entirely by the Defendants in this case. The Commissioner is tasked with creating and furnishing the application form and the Probate Judges are tasked with reviewing applications and determining eligibility. No other Georgia official plays any role. The Commissioner claims that his role is too minor to make him a proper defendant and the Probate Judges say they are not proper defendants because they just apply the law and, furthermore, have not yet been asked to grant licenses to these particular Plaintiffs, who are ineligible under the laws challenged here ("the Carry Ban").

Both are wrong. The Commissioner is wrong that his role is too minor to make him a defendant. This Court has recognized that a defendant need not be the sole or even ultimate cause of an injury for a plaintiff to have standing against him and the Commissioner's role mirrors those that other circuits have found are sufficient to support standing. The Probate Judges are wrong that Plaintiffs need to undertake the futile act of applying for a license or that they are immune from suit because they are judges or just applying Georgia law.

All Defendants are properly before the Court, and the district court's decisions dismissing the case must be reversed, but this Court should go further and remand with instructions that the district court declare the Carry Ban unconstitutional under the Second and Fourteenth Amendments. This case implicates the fundamental

1

constitutional rights of Plaintiffs and following the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), if Plaintiffs have standing, the proper resolution is clear. *Bruen* establishes that the Second Amendment protects the right to carry firearms in public for self-defense, and the Second Amendment applies by its own terms to all the "people," a group that undeniably includes Plaintiffs. Because the Georgia Carry Ban prevents ordinary 18-to-20-year-old adults like Plaintiffs from carrying firearms in public for self-defense, it must be found unconstitutional.

## ARGUMENT

### I.    Plaintiffs Have Standing.

Standing requires that a litigant suffer "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020).

#### A. Plaintiffs Have Standing to Sue the Probate Judges.

The Probate Judges argue that Plaintiffs lack standing to sue them because they did not first apply for a license which they knew the Probate Judges would deny to them. Br. of Appellees Jackson, Martin and Spires 5–6, Doc. 16 (Dec. 21, 2022) ("Probate Judges Br."). As Plaintiffs noted in their opening brief, courts have repeatedly "recognized circumstances in which a failure to apply may be overcome

2

by facts which demonstrate the futility of such application." *Terry v. Cook*, 866 F.2d 373, 378 (11th Cir. 1989); *see* Br. of Pls.-Appellees 17–18, Doc. 11 (Nov. 21, 2022) ("Pls.' Br."). The Probate Judges do not engage with any of the cases Plaintiffs cite in their opening brief, which are controlling. Instead, they cite several other cases to support their claim that requiring such a futile act is "routine," but these cases are all distinguishable. Probate Judges Br. 5–6.

The most relevant case, *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012), supports Plaintiffs' standing. In *Decastro*, the plaintiff's claim was "tantamount to a challenge to" "New York's [handgun] licensing scheme" but he lacked standing because he had not applied for a license. *Id.* at 164. Although he alleged that very few handgun license applications were ever granted under New York's restrictive standard (the standard held unconstitutional in *Bruen*), that did not mean his application was necessarily futile and the court simply could not know whether he would have been one of the few granted a license unless he applied first. *See id.* By contrast, the Court pointed to *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), as an example of a situation where an application *was* futile so standing existed without an application being made, noting that in *Bach* the plaintiffs challenging the firearm licensing laws were non-residents who were "statutorily ineligible for a license." *Decastro*, 682 F.3d at 164. There was no need for such a person to first test the system; it was clear they would be denied and could challenge the law without

3

making an application. Plaintiffs are in the same position. They are statutorily ineligible for licenses, so *Decastro* and *Bach* support, rather than undermine, their standing in this case. *Doe v. Virginia Department of State Police*, 713 F.3d 745 (4th Cir. 2013), is like *Decastro*. In that case the plaintiff alleged that her classification as a sex offender denied her access to school and church property, but under Virginia law, sex offenders were permitted to "petition a Virginia circuit court, the [school board], or any church" to gain access to those properties. *Doe*, 713 F.3d at 754. Because the plaintiff had not taken that step it was "far from clear whether she will ultimately be barred from entering these properties" and her injury was still hypothetical. *Id.* Here it is clear what would happen if Plaintiffs applied, so there is no need to make an application.

Other cases involve plaintiffs who suffered an injury, but sued for relief that exceeded the scope of that injury that could be recognized by the courts. In *Allen v. Wright*, plaintiffs sued to challenge the IRS's decision to give tax-exempt status to certain private schools which, they alleged, employed racially discriminatory admissions practices. The Court noted, however, that "respondents do not allege that their children have been the victims of discriminatory exclusion from the schools. … Indeed, they have not alleged at any stage of this litigation that their children have ever applied *or would ever apply to any private school*." 468 U.S. 737, 746 (1984), *overruled on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*

4

572, U.S. 118 (2014) (emphasis added). Instead, they merely objected to these schools receiving preferred tax status, an abstract injury, that, if recognized, "would extend nationwide to all members of the particular racial groups against which the Government was alleged to be discriminating by its grant of a tax exemption." *Id.* at 756. Similarly, in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), the Supreme Court found no standing for a black individual who was refused service on account of his race at a Moose Lodge when visiting as a guest of a member. The Supreme Court held that the plaintiff lacked standing to challenge the membership policy of the club, since "[a]ny injury … from the conduct of Moose Lodge stemmed, not from the lodge's membership requirements, but from its policies with respect to the serving of guests of members." *Id.* at 166. Notably, the Supreme Court also held that the plaintiff *had* "standing to litigate the constitutional validity of Moose Lodge's policies relating to the service of guests of members." *Id.* at 168. In other words, the plaintiff had standing as far as his injury went, but lacked standing to challenge policies that had not impacted him (and which he had never alleged would impact him). Unlike in *Allen* and *Moose Lodge*, the relief Plaintiffs are asking for is directly related to the judicially cognizable injury they have alleged, so they have standing.

Other cases rejected standing based on the specific pleading standards for certain types of claims. *Strickland v. Alderman*, 74 F.3d 260 (11th Cir. 1996), involved an as-applied challenge to the denial of building permits, but this Court

acknowledged that the plaintiff "at no time traveled to city hall to make inquir[ies] about obtaining building permits. *Id.* at 265–66. This defeated standing because "[a]s applied due process and equal protection claims are ripe for adjudication when the local authority has rendered its final decision." *Id.* at 265. At issue in this case, however, is a *facial* challenge to the Carry Ban's age limitation, so the *Alderman* rule does not apply. And in any event, this Court acknowledged in *Alderman* that "[a]n exception to the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision." *Id.; Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005) is inapplicable as it dealt with "specific ripeness requirements applicable to land use disputes." And *United States v. Vosburgh*, No. 94-35635, 59 F.3d 177 (Table) (9th Cir. 1995), is an unreported decision on appeal from a criminal conviction in which the Ninth Circuit *allowed* a facial challenge to a permitting system on First Amendment grounds, just noting that the defendant could "only challenge these regulations on their face because he had not applied for a permit prior to the instant violation." *Id.* at*3 n.2. In short, none of these cases would require Plaintiffs in this case to waste their time applying for a carry license that the Probate Judges, under Georgia law, cannot give to them.

Next, the Probate Judges argue they are not proper defendants because they have no role in prosecuting violators of the Carry Ban, Probate Judges Br. 6–7, but that misunderstands what "prosecution" means in this context. The Probate Judges

6

have authority to enforce the Carry Ban against Plaintiffs, not by charging them with a violation, but by denying them licenses though they have a Second Amendment right to acquire them. Because "the rules they [are] executing are unconstitutional, their actions cause[ the] injury to the plaintiffs' legal rights," and Plaintiffs have standing to sue them. *Strickland v. Alexander*, 772 F.3d 876, 886 (11th Cir. 2014) (cleaned up).

Next, the Probate Judges argue this Court should hold Plaintiffs lack standing because "this case strongly mirrors *Seegars v. Ashcroft*, 396 F.3d 1248 ([D.C. Cir.] 2005)." Probate Judges Br. 7. *Seegars* is an outlier which this Court has never followed. In *Seegars*, the D.C. Circuit grudgingly though faithfully applied its own precedent, which it acknowledged was "in sharp tension with standard rules governing preenforcement challenges to agency regulations" as well as with "cases upholding preenforcement review of First Amendment challenges to criminal statutes," distinctions with "no explicit grounding in Supreme Court decisions." *Seegars*, 396 F.3d at 1253–54; *see also Parker v. Dist. of Columbia*, 478 F.3d 370, 374–75 (D.C. Cir. 2007) ("[T]he Supreme Court [takes] a far more relaxed stance on pre-enforcement challenges than *Navegar* and *Seegars* permit."). This Court has never applied the idiosyncratic standing rules that govern in the D.C. Circuit, and the Probate Judges offer no good reason to start.

In a last-ditch effort to avoid the unavoidable, the Probate Judges suggest that if a Plaintiff were to "submit an application and argue that the Second Amendment supersedes Georgia's age requirement … the probate judge could agree and issue a [license]." Probate Judges Br. 8. This speculation does not defeat Plaintiffs' standing. This suit has been pending for almost two years, and the Probate Judges have *never* stated that they would disregard Georgia's permitting laws, which they would have to do to grant Plaintiffs a license. And even if they *did* disavow enforcement—and to be clear, they have done no such thing—Plaintiffs would still have standing. *See Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998) (holding that despite the defendants' "disavowal of their authority to enforce" the law at issue, "a credible threat of application remains" because the defendants "ha[d] the power" to enforce the law); *see also ACLU v. The Florida Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993).[1]

## B. Plaintiffs' Have Standing to Sue the Commissioner.

The Commissioner claims that Plaintiffs injuries are not "fairly traceable" to himself because he carries out only a "single and very limited task" in Georgia's carry licensing scheme—he provides the forms on which an application is made. Br.

---

[1] The Probate Judges also argue that FPC lacks organizational standing because it lacks a member who has been injured by the Carry Ban. *See* Probate Judges Br. 9. If this Court finds the individual Plaintiffs have standing, then FPC has standing as well. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977).

of Def./Appellee Chris Wright 13, Doc. 18 (Jan. 20, 2023) ("Comm'r Resp."). Even if the Commissioner is right, that does not deprive this Court of jurisdiction, because as just discussed, the Plaintiffs have standing to sue the Probate Judges. That said, Plaintiffs have standing against the Commissioner, too, because providing the forms is "enforcement" enough to give rise to standing, which merely requires "a causal connection" linking "the injury to the complained-of conduct." *Strickland*, 772 F.3d at 885. The Commissioner argues otherwise, claiming Plaintiffs "cannot show that including this language on the form causes probate judges to deny licenses." Comm'r Resp. at 14. That is beside the point. As Plaintiffs have explained, adults who are under 21 and who have never served in the military cannot even submit a complete application because the forms the Commissioner has furnished require individuals under 21 to state their age and "attach proof of completed basic training or honorable discharge." Pls.' Br. at 12–16. That is the "causal connection" that gives Plaintiffs standing to sue the Commissioner. *Strickland*, 772 F.3d at 885.

The Commissioner would like to make the Probate Judges the only proper defendants by insisting that Plaintiffs' injury be considered only as the certain denial of their application for a carry license under Georgia law. Comm'r Br. 15. In fact, it is both the form of the application and the age requirement the Probate Judges apply when considering that application which together prevent plaintiffs from acquiring carry licenses. Traceability "does not require the challenged action to be the sole or

9

even immediate cause of the injury." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *see also Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). In pre-enforcement actions, "[d]esignation of a proper public official as defendant does not require that the official's acts be aimed directly at the plaintiff. 'Standing' requirements can be satisfied by showing that the defendant's acts have caused others to react in a way that injures the plaintiff." WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3531.5 (3d ed.). Put another way, "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (citation omitted).

The Commissioner claims that this Court's decision in *Jacobson* establishes that Plaintiffs' injuries are not traceable to him, Comm'r Br. 16, but in *Jacobson*, the plaintiffs relied on the Florida Secretary of State's "general supervision and administration of the election laws" to make him a defendant in a challenge over the ordering of candidates on ballots. 974 F.3d at 1255. The Secretary's only role with respect to ballots was to "certify to the supervisor of elections of each county … the names of persons nominated." *Id.* at 1253 (quoting Fla. Stat. § 99.121) (brackets omitted and ellipsis in original). The officials with *complete* authority to decide where to place candidates on ballots were the county election supervisors, so the Eleventh Circuit could safely conclude the Secretary of State "didn't do (or fail to

10

do) *anything that contributed* to [plaintiffs'] harm." *Id.* (citation omitted) (emphasis added). Unlike in *Jacobson*, the Commissioner has a specific role in effectuating the Carry Ban, and that role, even if not the ultimate or dispositive one "contribute[s] to [plaintiffs'] harm." *See id.*

The *Jacobson* court's discussion of the redressability element of standing underscores why the Commissioner is a proper defendant in this case. The injury suffered by the *Jacobson* plaintiffs was *exclusively* caused by the county election supervisors so a "declaratory judgment against the Secretary [would] not bind the Supervisors, 'who are not parties' to this action" and so would "remain lawfully entitled to print candidates' names on the ballot in the order prescribed by Florida law unless and until they are made parties to a judicial proceeding that determines otherwise." *Id.* at 1254. In this case, a judgment from this Court to which the Commissioner is not a party will not bind him, and the Carry Ban will still require that he provide forms that note the under-21 age restriction. To be sure, the defendant licensing officials could be enjoined to grant licenses to otherwise eligible individuals under 21 despite their not being able to complete an application, but it remains the fact that enjoining the Commissioner to make the form reflect constitutional realities would contribute to providing complete relief for Plaintiffs.

The Commissioner attempts to distinguish two cases on which Plaintiffs relied in their opening brief—*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir.

11

2020) and *Henne v. Wright*, 904 F.2d 1208 (8th Cir. 1990)—but both cases are on point. As to *Texas Democratic Party*, the Commissioner distinguishes his role creating forms from the Texas Secretary of State's role doing the same thing by claiming the Secretary of State, unlike him, " 'ha[d] the authority to compel or constrain local officials' based on what she included on the form." Comm'r Br. at 19 (quoting *Texas Democratic Party*, 978 F.3d at 180). But *the only* basis for the Fifth Circuit to conclude the Secretary had such authority was that the local officials had to use her forms: "Because local authorities are required to use the Secretary's absentee-ballot form outside of emergency situations, *id.* § 31.002(d), the Secretary has the authority to compel or constrain local officials based on actions she takes as to the application form." *Texas Democratic Party*, 978 F.3d at 180. Here too, applications must be made on the form provided by the Commissioners.

The Commissioner's argument against applying *Henne* fares no better. He points out that the Eighth Circuit concluded that, when hospital employees filled out the forms created by the defendant, they were "acting upon instructions from the [defendant]." Comm'r Br. 20 (quoting *Henne*, 904 F.2d at 1210–1211. But this is not really a distinction at all—the basis for the Eighth Circuit reaching that conclusion was that the defendant was "responsible for furnishing forms and instructions for use in completing birth certificates" as a method of implementing the Nebraska law restricting the choice of surnames for newborns. *Henne*, 904 F.2d

12

at 1210–11. The same can be said here of the Commissioner's role in implementing the Carry Ban.

Next the Commissioner argues that Plaintiffs lack standing against him "for the additional reason that, since the 2022 amendments, a weapons carry license is no longer required" to carry a handgun in public so "a license application form … is [also] no longer required." Comm'r Br. 21. But as Plaintiffs have explained, a license *is* still required for an 18-to-20-year-old who wishes to carry but is not currently eligible for a carry license. *See* Pls.' Br. 20–21. In fact, as Plaintiffs explained, Pls.' Br. 16, the only effect the passage of the Georgia Constitutional Carry Act had on this case was to provide an additional basis for finding standing against the Commissioner, since a court could enjoin the Georgia State Patrol from arresting Plaintiffs for carrying without a license. The Commissioner argues it is speculative that Plaintiffs would ever face arrest, Comm'r. Br. 21–22 n.6, but the fear of arrest and prosecution is sufficient to establish standing when the plaintiff's desired course of action "fall[s] within the plain language of the [challenged statute]." *Ga. Latino All. for Hum. Rights v. Gov. of Ga.*, 691 F.3d 1250, 1258 (11th Cir. 2012). Plaintiffs' fears of enforcement provide an alternative and adequate ground for standing against the Commissioner.

Finally, the Commissioner argues that Plaintiffs lack standing because their injuries would not be redressed by an order that he change the forms, since the

Probate Judges still must deny Plaintiffs' applications. Comm'r Br. 22–23. Redressability does not require that the order against any one defendant completely alleviate a plaintiff's injury. "The Supreme Court has rejected interpretations of the rule that demand complete redressability, stressing that a plaintiff need show only that a favorable decision would redress '*an* injury,' not '*every* injury.'" *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) (quotation omitted) (emphasis in original). Otherwise, states could avoid judicial scrutiny of patently unconstitutional conduct through the simple expedient of dividing enforcement duties among multiple officers. While Plaintiffs could get *sufficient* relief from an order directing Probate Judges to process applications notwithstanding instructions on the form to the contrary, to get *complete* relief they need an order directing the Commissioner to change the form. That is precisely the reason the Plaintiffs have included the Probate Judges *and* the Commissioner in this suit.

### C. Plaintiffs' Claims Are Ripe.

The Probate Judges also argue that Plaintiffs' claims are not ripe because they have not been denied licenses or prosecuted for carrying without licenses. Probate Judges' Br. 7. "In assessing whether a dispute is concrete enough to be ripe, [courts] evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Wollschlaeger v. Gov. of Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (quotations omitted).

"This is one of those cases where the Article III standing and ripeness issues boil down to the same question." *Id.* (cleaned up). For the same reasons that the Plaintiffs need not violate the law or submit facially deficient applications for licenses to have standing to challenge Carry Ban, they do not need to do those things to make their purely legal argument fit for judicial decision. *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (Challenges presenting "purely legal issues" are "presumptively ripe for judicial review."); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 & n.8 (2007).

In arguing otherwise, the Probate Judges claim that Plaintiffs cannot sue them because a "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." Probate Judges Br. 11 (quoting *1st Westco Corp. v. Sch. Dist.*, 6 F.3d 108, 113 (3d Cir. 1993)). This is not a ripeness argument. But even more importantly, Plaintiffs have not sued the Probate Judges because they have some general obligation to enforce the law, but because they have a specific obligation to grant or deny carry license applications.

## II. Plaintiffs' Claims Are Neither Moot Nor Barred By Any Form of Immunity.

The Probate Judges defend the portion of the district court's decision that held Plaintiffs' claims are moot. Probate Judges Br. 12. In doing so, they repeat the

15

district court's erroneous reading of the Georgia Constitutional Carry Act, but as Plaintiffs have explained, if they were granted a license to carry today, they would become "lawful weapons carriers" and be permitted to carry a handgun in public for self-defense. O.C.G.A. § 16-11-129(b)(2); *see also* Pls.' Br. 20–21. The Probate Judges respond that the district court could not order such relief because Plaintiffs have not applied for a license. Probate Judges Br. 13. Yet again, Plaintiffs do not need to apply for a license to secure jurisdiction in this case. Plaintiffs seek—and a court could grant—a declaration that the age restriction violates their Second Amendment rights and an injunction forbidding the Probate Judges from denying Plaintiffs a license if they can demonstrate they are qualified but for the age requirement. That would redress their injuries.

The Probate Judges argue that this relief too, is outside the Court's power, because Section 1983 makes injunctive relief available "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity" only if "a declaratory decree was violated" first, and because Section 1983 "may not be used to compel a state court to take a particular course of action." Probate Judges Br. 13 & n.2 (quoting 42 U.S.C. § 1983). First, by its plain terms, Section 1983 permits *declaratory* relief even against judges acting in their judicial capacity, so this argument does not provide a basis for dismissing the Probate Judges from the case entirely. Injunctive relief is available too, because Plaintiffs have sued

16

the Probate Judges in their role processing carry license applications, not in their judicial capacity.

"Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). Under O.C.G.A. § 16-11-129(a)(1), "[t]he judge of the probate court of each county shall, on application under oath, on payment of a fee of $30.00, and on investigation of the applicant pursuant to subsections (b) and (d) of this Code section, issue a weapons carry license." This is not a judicial function but rather one of "the administrative or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 227 (1988). In many, if not most other states, review of similar applications is processed by the state police, *see, e.g.*, 430 ILCS 65/2; Tex. Govt. Code Ann. § 411.174, or a county sheriff, *see, e.g.*, Minn. Stat. Ann. § 624.714; 18 Pa. Cons. Stat. § 6109. And in New Jersey, which like Georgia delegates review of license applications to its judges, the State Supreme Court has concluded that in providing for "a Superior Court judge to issue [each weapons carry] permit … the Legislature has reposed what is essentially an executive function in the judicial branch. … [It is] clearly non-

17

judicial in nature." *In re Preis*, 573 A.2d 148, 151 (N.J. 1990) (citations omitted). In West Virginia, a similar scheme was declared unconstitutional under West Virginia's separation-of-powers doctrine because "no judicial power is exercised in granting or denying a license to carry a concealed, deadly weapon." *Application of Dailey*, 465 S.E.2d 601, 610 (W.V. 1995).

Granting or denying an application is compelled by the eligibility requirements in the statute—the "investigation" described in the statute merely involves determining whether certain exceptions apply based on the face of the application and a background check from law enforcement. It does not "involve judicial discretion; in other words, the judge [does] not utilize his education, training, and experience in the law" to decide whether to grant a license. *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 222 n.3 (5th Cir. 2009) (quotation omitted). It is more like issuing a marriage license, or one of the many other "ministerial functions" that probate judges may be "provided by law" to perform. O.C.G.A. § 15-9-30; *see also Comer v. Ross*, 28 S.E. 387, 387 (Ga. 1897) ("The ordinary [or probate judge], under our laws, is an official charged with the performance of duties judicial, ministerial, and clerical. Not by his title, but only by his acts, can the exact capacity in which he appears ever be known upon any special occasion.").

Other elements of the statutory scheme also weigh against finding the issuance of a weapons license is a "judicial" function. For instance, O.C.G.A. § 5-3-2,

requires (subject to exceptions not relevant here) that "[a]n appeal shall lie to the superior court from *any decision* made by the probate court, except an order appointing a temporary administrator." (emphasis added). But "[w]hen an eligible applicant fails to receive a license" as required, his or her remedy is to "bring an action in mandamus or other legal proceeding in order to obtain a license." *Id.* § 16-11-129(j). In other words, while ordinary judicial *decisions* of probate judges are subject to appeal, a weapons license application denial is not treated that way and requires the applicant to initiate, for the first time, a legal proceeding to seek a license.

Furthermore, the statute requires that, if an applicant succeeds in his mandamus action against a probate judge, the probate judge shall pay "his or her costs in such action, including reasonable attorney's fees." *Id.* In light of the doctrine of judicial immunity, allowing an award of attorney's fees against a judge is at least unusual if the judge were acting in a judicial capacity.

Neither the filing nor the processing of applications occurs in open court or in judicial chambers—the application is filed with a clerk and the investigation is primarily performed by police who conduct the background check, it does not involve any case pending before the judge, and applicants for firearms licenses do not appear before the probate judges in their judicial capacity. Therefore, in light of the practices of other states that vest the power to grant applications in non-judicial

19

officers, the several indications in the statute itself that the probate judges are not fulfilling ordinary judicial functions, and each of the other *Sibley* factors, the court must conclude the Probate Judges are not entitled to judicial immunity in this case.

The other line of authority that the Probate Judges suggest bars Plaintiffs' action is inapplicable. *See* Probate Judges Br. 13 n.2. Each of the cases the Probate Judges cite deals with the inability of the federal courts to issue mandamus relief against a state court, *see, e.g.*, *Lamar v. 118 Jud. Dist. Ct. of Tex.*, 440 F.2d 383, 384 (5th Cir. 1971), but Plaintiffs do not seek mandamus.

Finally, the Probate Judges claim the Eleventh Amendment bars Plaintiffs' claims against them. Plaintiffs agreed below that their claims against the Defendants in their official capacities seeking money damages should be dismissed, but the Eleventh Amendment does not bar their claims for prospective declaratory or injunctive relief, *see, e.g.*, *Cross v. Ala. State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995), and none of the cases the Probate Judges cite, *see* Probate Judges Br. 14–15, are to the contrary.

## III. The Court Should Address the Merits of Plaintiffs' Claims.

For the foregoing reasons, the district court erred when it dismissed Plaintiffs' claims against all Defendants. But this Court should do more than just reverse that decision. It should hold that the Carry Ban violates the rights of 18-to-20-year-old

Georgians under the Second and Fourteenth Amendments. *See Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012); *see also* Pls.' Br. 21–26.

The Commissioner calls this request "highly unusual" and faults Plaintiffs for not pointing to an example of a case where "this Court reversed on a threshold ground, like standing, and then proceeded to consider and rule on the merits of the plaintiffs' claims despite the district court never reaching them." Comm'r Br. 24–25. It is appropriate to proceed to the merits where a case presents "a pure question of law, and … refusal to consider it would result in a miscarriage of justice," "where the interest of substantial justice is at stake," "where the proper resolution is beyond any doubt," or where the "issue presents significant questions of general impact or of great public concern," *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360–61 (11th Cir. 1984), and cases like those the Commissioner describes exist. For example, in *Judd v. Haley*, 250 F.3d 1308, 1312–13 (11th Cir. 2001), a prisoner sought a writ of habeas corpus, alleging that his Sixth Amendment right to a public trial had been violated by the closure of the courtroom for part of his criminal prosecution. The district court never reached the merits of Judd's constitutional claim because it found the doctrine of procedural default precluded review. *Id.* at 1313. This Court reversed. *Id.* at 1318. But it went further—the Court noted that although "[o]rdinarily, we would remand the case to the district court for consideration of [the Sixth Amendment] claim on the merits … the record is more

than adequate for us to review the constitutional claim without remand," since remand "would amount to a waste of judicial resources." *Id.* at 1318–19. This Court should do the same.

Aside from pointing out that it is not the way cases most commonly proceed, the Commissioner offers no good reason not to address the merits at this time. He argues that this case does not present a purely legal issue because Plaintiffs have sought nominal damages and pleaded an as-applied claim. Comm'r Br. 26. But the as-applied claim Plaintiffs pleaded argued only that the Carry Ban, should it be assessed under a tiers-of-scrutiny analysis, is especially unjustifiable as applied to women like Plaintiff Long. *See* App. 27–29. Under *Bruen*, tiers of scrutiny are not appropriate, so Plaintiffs' "as-applied" claim does not differ in any respect from their facial claim. And whether Plaintiffs' injuries are "redressable through nominal damages is … a purely legal question" and, more importantly, Plaintiffs are willing to disclaim any right to nominal damages to further this Court's review. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 n.7 (9th Cir. 2020). The Commissioner also argues he is entitled to discover whether Plaintiffs are ineligible for carry licenses for reasons other than their age, Comm'r Br. 26 n.7, but that issue is only relevant to Plaintiffs' standing, it has absolutely no bearing on the question of whether or not the Carry Ban is constitutional, and Plaintiffs have adequately supported their allegations with affidavits which the

22

Commissioner has not controverted. App. 41–48. This should not stop this Court from reviewing Plaintiffs' claims, when, as discussed above, it may order that Plaintiffs must be granted licenses *if they can show* they are eligible but for their age. *See, e.g.*, *Dist. of Columbia v. Heller*, 554 U.S. 570, 631 (2008) ("Before this Court, petitioners have stated that if the handgun ban is struck down and respondent registers a handgun, he could obtain a license, assuming he is not otherwise disqualified."); *Bruen*, 142 S. Ct. at 2135 n.8 (noting that petitioners will be entitled to carry licenses "if [their] allegations are proven true").

Next, the Commissioner argues this Court should not reach the merits because "the proper resolution of the case is not beyond any doubt" and because the question of whether 18-to-20-year-olds have equal Second Amendment rights to other adults "has never been passed upon by this Court or the Supreme Court." Comm'r Br. at 26–27 (quotation marks omitted). But as Plaintiffs have explained, the only possible conclusion following *Bruen* is that Plaintiffs must be permitted to carry handguns in public for self-defense on equal footing with other adults. *See* Pls.' Br. 26–46. That there is no controlling Eleventh Circuit authority on this point should not be taken to cast doubt on Plaintiffs' position. There are very few controlling Second Amendment circuit court decisions *anywhere* after *Bruen*. *See* 142 S. Ct. at 2125, 2127. The one case of which Plaintiffs are aware that decided this question following *Bruen* came down in Plaintiffs' favor. *See generally Firearms Pol'y Coal., Inc. v.*

*McCraw*, --- F. Supp. 3d ----, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022), *appeal dismissed*, *Andrews v. McCraw*, 22-10898, Doc. 34 (5th Cir. Dec. 21, 2022).

The Commissioner also claims judicial economy and concerns for prejudice weigh against considering the issues for the first time on appeal because he has not fully briefed the issue. But any deficiency on this point is not for lack of opportunity. This Court has said judicial economy is furthered by deciding these issues when both sides "have had the opportunity in their briefs" to discuss them. *Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567 (11th Cir. 1992). If the Commissioner has not taken advantage of those opportunities and has refused to defend the law on the merits, that should not impede Plaintiffs' ability to vindicate their constitutional rights.

Relatedly, the Commissioner is simply wrong when he claims that Plaintiffs "point to no support for their contention that 'the interest of substantial justice is at stake' simply because the case involves constitutional claims." Comm'r Br. 28. "The interests of substantial justice are generally equated with the vindication of fundamental constitutional rights." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1301 (11th Cir. 2003) (cleaned up) (quoted in Pls.' Br. 24). The Second Amendment right to carry a firearm for self-defense is such a right, so the interest of substantial justice is at stake in resolving these claims at the earliest possible moment.

Finally, the Commissioner argues that *Bruen* and *Heller* do not provide support for reaching the merits because in those cases "the district court based its dismissal not on standing (or any other threshold issue) but on a holding that the challenged law did not violate the Second Amendment." Comm'r Br. 28–29. But this obscures how very similar these cases were to the present challenge. In both *Heller* and in *Bruen*, the issues which turned out to be dispositive in the Supreme Court had not been factually developed at all in the district court (and in *Bruen*, not legally development either, since the claim was foreclosed by circuit precedent when it was brought). In both cases, the government urged the Supreme Court not to decide the ultimate issue but instead just correct the error below and remand for further consideration. In both cases, the Supreme Court declined to do so because it was equally well-positioned to the district court to address the purely legal issues presented by the case. *See Bruen*, 142 S. Ct. at 2135 n.8; *see* Br. of United States as *Amicus Curiae*, *District of Columbia v. Heller*, 07-290, *available at* https://bit.ly/3S2xltC. And as noted above, in both cases questions as to whether the plaintiffs were otherwise eligible under governing law to exercise their Second Amendment rights did not stop the Supreme Court from deciding whether the specific barriers to their exercise at issue in those cases were constitutional. This case is the same and this Court should follow suit.

# CONCLUSION

This Court should reverse the decisions dismissing this case and direct judgment be entered in Plaintiffs' favor.

Dated: February 17, 2023

Respectfully submitted,

/s/David H. Thompson
David H. Thompson
Peter A. Patterson
William V. Bergstrom
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 220-9660
Fax: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B)(ii) because this brief contains 6,402 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and 11th CIR. R. 32-4.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: February 17, 2023          /s/David H. Thompson
                                  David H. Thompson

                                  *Counsel for Plaintiffs-Appellants*

27

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on February 17, 2023. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: February 17, 2023          /s/David H. Thompson
                                       David H. Thompson

                                       *Counsel for Plaintiffs-Appellants*