No. 22-13444

# In the United States Court of Appeals for the Eleventh Circuit

CHRISTOPHER BAUGHCUM,
JR., ET AL.,

*Plaintiffs–Appellants*,

v.

GENOLA JACKSON, ET AL.,

*Defendants–Appellees*.

## PETITION FOR HEARING EN BANC

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
NO. 3:21-CV00036-DHB-BKE

David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 220-9660
Fax: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

*Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.*,
No. 22-1344

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE REPORT

I certify that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Association County Commissioners of Georgia-Interlocal Risk Management Agency (ACCG-IRMA), *insurer for Defendant-Appellees Jackson, Spires, and Martin*

2. Baughcum, Christopher Jr., *Plaintiff-Appellant*

3. Bergstrom, William V., *Counsel for Plaintiffs-Appellants*

4. Bowen, Judge Dudley H., *District Court Judge*

5. Burton, Beth, Deputy Attorney General, *Counsel for Defendant-Appellee Wright*

6. Carr, Christopher M., Attorney General, *Counsel for Defendant-Appellee Wright*

7. Cooper & Kirk, PLLC, *Counsel for Plaintiffs-Appellants*

8. County Reinsurance, LTD, *reinsurer for ACCG-IRMA*

9. Epps, Magistrate Judge Brian K., *Magistrate Judge*

10. Firearms Policy Coalition, Inc., *Plaintiff-Appellant*

11. Gore, Deborah Nolan, *Counsel for Defendant-Appellee Wright*

12. Jackson, Genola, *Defendant-Appellee*

13. John Monroe Law, P.C, *Counsel for Plaintiffs-Appellants below*

C-1 of 3

*Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.*,
No. 22-1344

14.Long, Sophie, *Plaintiff-Appellant*

15.Martin, Kathryn B., *Defendant-Appellee*

16.Meyers, Zane, *Plaintiff-Appellant*

17.Monroe, John R., *Counsel for Plaintiffs-Appellants below*

18.Patterson, Peter A., *Counsel for Plaintiffs-Appellants*

19.Piper, Tina, Senior Assistant Attorney General, *Counsel for Defendant-Appellee Wright*

20.Spires, Janice D., *Defendant-Appellee*

21.Thompson, David H., *Counsel for Plaintiffs-Appellants*

22.Waymire, Jason C., *Counsel for Defendants-Appellees Jackson, Spires, and Martin*

23.Williams, Terry, *Counsel for Defendants-Appellees Jackson, Spires, and Martin*

24.Williams, Morris & Waymire, LLC, *Counsel for Defendants-Appellees Jackson, Spires, and Martin*

25.Wright, Chris, *Defendant-Appellee*


No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*Christopher Baughcum, Jr., et al. v. Genola Jackson, et al.*,
No. 22-1344

Dated: March 24, 2023                  Respectfully submitted,

                                       /s/ David H. Thompson
                                       David H. Thompson

                                       *Counsel for Plaintiffs-Appellants*

## RULE 35(B) AND 11TH CIR. RULE 35-5(C) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: whether 18-to-20-year-olds have the right, under the Second Amendment to the United States Constitution, to carry firearms in public for self-defense. This question is of the utmost importance to the Plaintiffs, whose fundamental rights are currently denied by the State of Georgia. The panel opinion in *National Rifle Association, Inc. v. Bondi*, --- F.4th ----, 2023 WL 2484818 (11th Cir. Mar. 9, 2023), is dispositive of several issues in this case and contrary to the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

s/ David H. Thompson
David H. Thompson
*Attorney of Record for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES.....................................................................1

INTRODUCTION ..................................................................................1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE...................2

STATEMENT OF THE FACTS.............................................................3

ARGUMENT AND AUTHORITIES ....................................................4

   I.   The Panel Decision in *Bondi* Conflicts With *Bruen* And Controls Key Issues In This Case. ....................................................................4

      A. The Second Amendment Binds the States with the Scope it was Understood to Have in 1791. ....................................................6

      B. *Bondi*'s Historical Analysis Is Inadequate..............................12

  II.   The Issue Is Exceptionally Important.........................................13

 III.   This Case Is A Good Vehicle to Reconsider *Bondi* En Banc......................15

CONCLUSION .....................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Agostini v. Felton*, 521 U.S. 203 (1997)......................................................................9

*Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483 (1954) .........................................11

*Crawford v. Washington*, 541 U.S. 36 (2004) ....................................................8, 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .............................. 1, 4, 5, 12

*Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020) ...........................9

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012)...................14

*Hirschfeld v. BATFE*, 5 F.4th 407 (4th Cir. 2021).............................................5, 13

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022)........................................................13

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).................................................8

*Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*,
    619 F.3d 1289 (11th Cir. 2010)..........................................................10, 11

*National Rifle Ass'n of Am., Inc. v. BATFE*, 700 F.3d 185 (5th Cir. 2013)...........13

*National Rifle Ass'n of Am., Inc. v. BATFE*, 714 F.3d 334 (5th Cir. 2013)...........13

*National Rifle Ass'n, Inc. v. Bondi*, --- F.4th ----, 2023 WL 2484818
    (11th Cir. Mar. 9, 2023)..................................................... 1, 7, 8, 10, 12, 15

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)................................ 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

**Constitutions, Statutes, and Rules**

U.S. CONST.
    amend. II.......................................................................................................4
    amend. XIV, § 1 .........................................................................................11

Fed. R. App. P. 2........................................................................................................2

Fed. R. App. P. 35(c) ................................................................................................2

O.C.G.A.
    § 16-11-125.1(2.1) ...................................................................................3, 4
    § 16-11-126(g)(1) .........................................................................................3
    § 16-11-129(a)(1), (b) & (d)(1)(A)..............................................................4

§ 16-11-129(a)(2)(C)(iii)....................................................................4

§ 16-11-129(b)...................................................................................4

§ 16-11-129(b)(2)(A).........................................................................4

§ 16-11-129(d)(1)(A).........................................................................4

## **Other Authorities**

1 BLACKSTONE COMMENTARIES *441 (1803) ........................................12

JOHN BOUVIER, 1 INSTITUTES OF AMERICAN LAW 148 (1851).......................... 12, 13

H.B. 1543, The Florida Senate, https://bit.ly/3FOg96x
    (last visited March 24, 2023) ....................................................15

Mark W. Smith, *Attention Originalists: The Second Amendment was adopted in 1791, not 1868*, HARV. J. OF L. & PUB. POL'Y PER CURIAM (Dec. 7, 2022),
    https://bit.ly/42BmRX3.................................................................8

## STATEMENT OF ISSUES

1.    Whether a Georgia law prohibiting 18-to-20-year-olds from carrying handguns in public for lawful purposes, including self-defense, violates the Second and Fourteenth Amendments to the United States Constitution.

2.    Whether Plaintiffs have standing to sue the officials Georgia has charged with carrying out its firearm carriage licensing scheme, when they are denied access to that scheme as a result of their age.

3.    Whether Plaintiffs' claims are moot.

## INTRODUCTION

"[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). This right presumptively "belongs to all Americans," not an "unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580, 581 (2008). Plaintiffs are law-abiding, adult American citizens. Yet, the State of Georgia categorically bars them from carrying handguns in public for self-defense because they have not yet reached the age of 21.

After briefing in this case concluded, this Court decided *National Rifle Association, Inc. v. Bondi*, --- F.4th ----, 2023 WL 2484818 (11th Cir. Mar. 9, 2023). In that decision, the Court made two key errors that will be binding in this case and foreclose several arguments Plaintiffs have made against the Georgia laws at issue

here, unless this Court grants en banc review. Most importantly, *Bondi* interpreted the Amendment primarily by reference to historical restrictions on the right from the Reconstruction era instead of the Founding. This distinction is wrong *and* critical, because at the Founding there were *zero* laws that could serve as historical analogues to support the Georgia restriction on carriage. Instead, 18-to-20-year-olds at the Founding were *required* to own firearms. Furthermore, the panel misapplied *Bruen* by relying on 19th-century laws restricting the rights of minors to uphold a law restricting adults today. *Bondi* got both points wrong, misapplied *Bruen*, and will control the panel that reviews this case. For these reasons, Plaintiffs respectfully request the Court consider this case en banc and overrule the contrary decision in *Bondi*.

Plaintiffs acknowledge that the default time limit for petitioning for initial hearing en banc has passed, *see* Fed. R. App. P. 35(c), but given the timing of the *Bondi* decision this Court should exercise its authority to suspend that deadline and grant rehearing now for the reasons stated in this petition, *see* Fed. R. App. P. 2.

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Plaintiffs filed this suit against the Georgia Commissioner of Public Safety and three Georgia probate judges on May 20, 2021, alleging that each of the Defendants played a role in enforcing a Georgia law which prevented the Plaintiffs—18-to-20-year-old Georgians—from acquiring a license to carry

handguns in public for self-defense. All Defendants moved to dismiss this case on August 10, 2021. Plaintiffs opposed dismissal and moved for summary judgment. On April 5, 2022, the district court granted the Commissioner's motion, finding Plaintiffs lack standing to sue the Commissioner. On October 6, 2022, the district court granted the Probate Judges' motion as well, finding Plaintiffs lacked standing to sue them because they had not submitted an application for a license which the Probate Judges could not grant them. The district court also held that passage of the Georgia Constitutional Carry Act—which still prohibits Plaintiffs from lawfully carrying in public—mooted their claims.

Plaintiffs appealed to this Court on October 11, 2022, and the case is fully briefed. On March 9, 2023, a panel of this Court decided *Bondi*, which greatly altered the legal landscape for Second Amendment challenges brought against state laws restricting the Second Amendment rights of 18-to-20-year-old adults. Because *Bondi* will be binding on the panel that decides this case and is contrary to *Bruen*, Plaintiffs now seek initial hearing by the full Court en banc.

## STATEMENT OF THE FACTS

In Georgia, except in limited circumstances that do not permit carrying firearms in public, "no person shall carry a weapon unless he or she is a lawful weapons carrier," O.C.G.A. § 16-11-126(g)(1), a term that is defined, in relevant part, as "any person who is licensed or eligible for a license" to carry firearms. *Id.*

§ 16-11-125.1(2.1). Plaintiffs are 18-to-20-year-old adults (and organizations that count them as members), who do not possess licenses and do not qualify as persons who are "eligible for a license" because Georgia excludes from that category "[a]ny person younger than 21 years of age" who is not a member or an honorably discharged former member of the United States military. *Id.* § 16-11-129(b)(2)(A). The Defendants are the Commissioner, who "furnish[es] application forms and license forms" for applicants, *id.* § 16-11-129(a)(2)(C)(iii), and three probate judges who must review completed applications and grant licenses to eligible applicants, *id.* § 16-11-129(a)(1), (b) & (d)(1)(A).

Plaintiffs brought this suit, seeking a declaration that these laws (collectively "the Carry Ban") violate the Second and Fourteenth Amendments, and an injunction permitting them to apply for and receive licenses despite their age.

## ARGUMENT AND AUTHORITIES

### I.    The Panel Decision In *Bondi* Conflicts With *Bruen* And Controls Key Issues In This Case.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Heller*, the Supreme Court explained that "the people" means "all Americans," noting that, as used in the Constitution, "the people" is 'a term of art' that unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580–81 (quoting *United States*

*v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). Furthermore, the "Militia" referenced in the Amendment was understood, at the Founding, to be an entity "already in existence" made up of "all able-bodied men," which constituted the "pool" from which Congress "has plenary power to organize the units that will make up an effective fighting force." *Heller*, 554 U.S. at 596. In the first Militia Act, passed in 1792, Congress did just that, specifying that "each and every free able-bodied white male citizen . . . who is or shall be of the age of eighteen years" should be enrolled. *Id.* (quoting Act of May 8, 1792) (quotation marks omitted). Putting these two things together, the Second Amendment enshrines an individual right that must apply to at least every American who has attained the age of 18. *See, e.g., Hirschfeld v. BATFE*, 5 F.4th 407, 429–30 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322.

Last term, in *Bruen*, the Supreme Court clarified the standard for reviewing Second Amendment challenges: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and to rebut that presumption "the government must demonstrate that the [challenged] regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126.

The *Bondi* panel misapplied this test to find that a Florida restriction on firearm purchases by 18-to-20-year-olds was constitutional. In doing so, it set

damaging circuit precedent that forecloses several arguments Plaintiffs have made in this case. In particular, the *Bondi* panel opinion conflicts with *Bruen* and every other Supreme Court case analyzing the Second Amendment by emphasizing evidence of historical practice from the period surrounding the ratification of the Fourteenth Amendment at the expense of historical evidence from the Founding. *Bondi* further conflicts with *Bruen* in the way that it analyzed purported historical analogues. *Bruen* took a carefully tailored approach to historical analogues and rejected outliers, but the panel in *Bondi* endorsed broad restrictions on the fundamental rights of 18-to-20-year-olds based on laws that were materially distinguishable from Florida's. En banc hearing in this case is necessary to correct these errors in *Bondi* and to vindicate the fundamental rights of 18-to-20-year-olds in this circuit.

## A. The Second Amendment Binds the States With the Scope It Was Understood To Have In 1791.

In *Bruen*, the Supreme Court stated that the Constitution's "meaning is fixed according to the understandings of those who ratified it" and confirmed that "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." 142 S. Ct. at 2132, 2136 (quoting *Heller*, 554 U.S. at 634–35) (emphasis in *Bruen*). The Supreme Court went on to "acknowledge that there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment

6

was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." *Id.* at 2138. But the Supreme Court did not address the issue in *Bruen* because "the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry." *Id.*

The *Bondi* panel took this as an invitation to conclude that the 1868 understanding should control the meaning of the Second Amendment. It did so because the law at issue in *Bondi*—like the law at issue here—was a state law to which the Second Amendment applied only through the Fourteenth. *Bondi*, 2023 WL 2484818, at *4. The panel claimed that the "Supreme Court has not yet decided" whether this was appropriate and noted that though the Court had " 'generally assumed' " the meaning of the Bill of Rights was " 'pegged to the public understanding . . . in 1791,' " "an assumption is not a holding." *Id.* (quoting *Bruen*, 142 S. Ct. at 2137). The *Bondi* panel concluded that the later understanding "necessarily" trumped the earlier because the Fourteenth Amendment was ratified after the Second and "[a]s with statutes, when a conflict arises between an earlier version of a constitutional provision . . . the later-enacted provision controls." *Id.* (internal brackets omitted) It called the alternative conclusion—that the 1791 understanding controls—"illogical," because "it makes no sense to suggest the states

would have bound themselves to an understanding of the Bill of Rights . . . that they did not share when they ratified the Fourteenth Amendment." *Id.*

At every stage of this analysis, the *Bondi* panel got it wrong. It was wrong, first, to conclude there was no binding Supreme Court precedent that required it to give priority to 1791. *See generally*, Mark W. Smith, *Attention Originalists: The Second Amendment was adopted in 1791, not 1868*, HARV. J. OF L. & PUB. POL'Y PER CURIAM (Dec. 7, 2022), https://bit.ly/42BmRX3. The question was not "addressed" in *Bruen*—but that does not mean it is open. Two principles, from binding Supreme Court precedent, require the opposite conclusion. First, the incorporated Bill of Rights provisions have the same meaning against the states as they do against the federal government. *See, e.g.*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 765 (2010). Second, the Supreme Court has *always* treated the Founding as the key period for understanding the scope of the Bill of Rights. *See Bruen*, 142 S. Ct. at 2137–38 (collecting cases). The panel acknowledged the first point; its mistake was to view the second as a mere "assumption," and not a binding holding. The Supreme Court's decision to look to 1791 has frequently been dispositive of its assessment of the scope of constitutional rights. In *Crawford v. Washington*, 541 U.S. 36 (2004), for example, the Court noted that the question presented in that case (whether the use of out-of-court statements violated the Confrontation Clause of the Sixth Amendment, which applied against Washington

8

through the Fourteenth Amendment) was not resolved by the Constitution's text alone. *Id.* at 42. In looking to history, the Court staked its interpretation on the Framers' view of the clause, noting that the "most natural[]" reading of the text was as a "reference to the right of confrontation at common law, admitting only those exceptions *established at the time of the founding*." *Id.* at 54 (emphasis added). And in *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, (2020), the Court held in the Establishment Clause context that a tradition that "arose in the second half of the 19th century" involving laws from "more than 30 States" was too late to "establish an early American tradition" because it had no basis in the Founding. *Id.* at 2258–59.

At most, *Bruen* indicated that the Supreme Court may reconsider which time period should control—in a case where that issue mattered to the outcome—but until the Supreme Court overrules its own binding decisions, this Court is not free to take an aside about a "scholarly debate" as an invitation to declare those decisions no longer good law. *See, e.g., Agostini v. Felton*, 521 U.S. 203, 237 (1997).

Besides, it should be clear from *Bruen* that the Supreme Court was *not* casting doubt on its earlier practices, since the Court in *Bruen also* treated evidence surrounding 1791 and the Founding as generally dispositive of the contours of the incorporated Second Amendment. "[W]hen it comes to interpreting the Constitution, not all history is created equal," and the Court in *Bruen* warned "against giving

9

postenactment history more weight than it can rightly bear." 142 S. Ct. at 2136. That meant that, "because post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.' " *Id.* at 2137 (quoting *Heller*, 554 U.S. at 614). It would make no sense to accord "earlier sources" greater weight than Civil-War-era sources if the meaning of the Amendment was pegged to the 1868 understanding. The *Bondi* panel's conclusion conflicts with binding precedent—including *Bruen*.

Beyond failing to recognize it was bound, the panel was wrong to find that the 1868 understanding should trump the 1791 understanding of the right because of some apparent "conflict" between the two. It is true that "when two statutes conflict, the later-enacted statute controls," *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Engineers*, 619 F.3d 1289, 1299 (11th Cir. 2010); *see also Bondi*, 2023 WL 2484818, at *4 (quoting the same), but the *Bondi* panel did no analysis of the Fourteenth Amendment to explain how it "conflicted" with the Second Amendment, ignoring this Court's warning that "[t]he conclusion that two statutes conflict, however, is one that courts must not reach lightly. If any interpretation permits both statutes to stand, the court must adopt that interpretation," *Miccosukee Tribe*, 619 F.3d at 1299. In fact, no such conflict exists. Section one of the Fourteenth Amendment, which is the source of the incorporation doctrine, is plainly focused on

10

the application of *existing rights* against the states. *See* U.S. CONST. amend. XIV, § 1. Indeed, the Supreme Court has been clear that the purpose of the Fourteenth Amendment was to rein in rights abuses by the states, and many contemporaries wanted nothing more than to defeat that purpose. *See, e.g., Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 489 (1954) ("The most avid proponents of the post-War amendments undoubtedly intended them to remove all legal distinctions among 'all persons born or naturalized in the United States.' Their opponents, just as certainly, were antagonistic to both the letter and the spirit of the Amendments and wished them to have the most limited effect."). The *Bondi* panel's decision violated the principle that courts should not find conflicts unless they are unavoidable and has the bizarre effect of permitting those who were to be constrained by the Fourteenth Amendment to change the scope of the rights they were newly forced to recognize.

The *Bondi* panel ignored an alternative canon of construction that would have resolved this issue easily and with none of the conflicts or complications the panel's ruling entailed. "[A] specific statutory provision trumps a general one." *Miccosukee Tribe*, 619 F.3d at 1299. Here, the specific constitutional provision—the Second Amendment—was ratified in 1791 and its meaning is *fixed* according to the public understanding of that time. *Bruen*, 142 S. Ct. at 2132. The more general provision does not suggest its ratifiers intended to change the existing dimensions of the Bill of Rights; it merely demonstrates its ratifiers intended to expand the application of

existing rights. The Fourteenth Amendment applied *the Second Amendment* to the states; it did not change the meaning of that Amendment. *See Heller*, 554 U.S. at 580.

### B. *Bondi*'s Historical Analysis Is Inadequate.

*Bondi* not only erred in choosing 1868 as the controlling date of analysis but also erred in analyzing Florida's identified analogues. Under *Bruen*, Courts must compare modern regulations to potential analogues by asking "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 142 S. Ct. at 2133. In *Bondi*, the Court accepted as analogues many late-19th-century laws which specifically targeted sales of firearms or other weapons to *minors*. *See* 2023 WL 2484818, at *7–9. Of course, the Founding-era evidence which should have controlled demonstrates that 18-to-20-year-olds have *always* had full Second Amendment rights regardless of their minority status at the Founding. *See* Br. of Pls.'-Appellants at 38–40, Doc. 11 (Nov. 21, 2022). But regardless, 19th-century laws restricting the firearm rights of legal *children* cannot support modern laws restricting the firearm rights on legal *adults*. That is because unlike adults, children enjoy the protection of a parent or guardian responsible for their safekeeping. *See, e.g.*, 1 BLACKSTONE COMMENTARIES *441 (1803). Therefore, there is no basis in history for according reduced constitutional protection to legal adults; at a minimum, upon reaching the age of majority, individuals in this country have always been

understood to be "in full enjoyment of [their] civil and political rights." JOHN BOUVIER, 1 INSTITUTES OF AMERICAN LAW 148 (1851).

Additionally, *Bondi* analyzed the historical and modern laws at a high level of generality that seemingly would justify *any* law that seeks to limit who can buy a firearm for reasons of "enhancing public safety." This directly conflicts with *Bruen*, which warned that this type of analysis would effectively reinstate the old interest-balancing approach. 142 S. Ct. at 2133, n.7. Instead, the key historical point *Bondi* should have recognized is the *lack* of any historical tradition of restricting the arms rights of legal adults because of their age.

## II.    The Issue Is Exceptionally Important.

Before *Bruen* was decided, judges on the courts of appeals were sharply divided over the constitutionality of restrictions on 18-to-20-year-olds. *See Hirschfeld*, 5 F.4th at 452, *Jones v. Bonta*, 34 F.4th 704, 733 (9th Cir. 2022), *vacated in light of Bruen*, 47 F.4th 1124 (2022); *Nat'l Rifle Ass'n of Am., Inc. v. BATFE*, 700 F.3d 185, 203 (5th Cir. 2012), *abrogated by Bruen*, 142 S. Ct. at 2127 n.4; *see also Nat'l Rifle Ass'n of Am., Inc. v. BATFE*, 714 F.3d 334, 335 (5th Cir. 2013) (Jones, J., dissental). In the wake of *Bruen*, *Bondi* is the first authoritative circuit court precedent on this important issue.

*Bondi* is also the first circuit court decision of which Plaintiffs are aware that gives priority to historical sources from the Reconstruction Era in interpreting the

Second Amendment. In fact, Plaintiffs are not aware of another circuit case taking this approach to *any* enumerated right. Thus, *Bondi* is likely to have major ramifications across the Eleventh Circuit's caselaw, absent further review. For example, there is no reason why a state law that allegedly violates the First Amendment would not have to now be analyzed under *Bondi* by looking to understandings of the right in 1868. And the impact of the panel's decision may not be limited to this Circuit's caselaw. *Bondi* is among the first circuit court decisions to address the *Bruen* framework and it is likely to have nationwide influence. Following *Heller*, this Court (albeit in dicta) indicated that it would adopt a two-step framework for Second Amendment challenges, noting that several other circuits, themselves mostly following the lead of a few early decisions, had adopted that same framework. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012). In other words, early cases had an outsized influence in pushing the Courts of Appeals effectively unanimously toward the wrong result. *See Bruen*, 142 S. Ct. at 2127. Now history risks repeating itself; it is likely that courts around the country are already looking to *Bondi* to help them understand how to apply *Bruen*, and the errors the panel made may be replicated nationwide if the en banc Court does not correct them. At a minimum, they will be binding in this Circuit and in Plaintiffs' own case.

14

## III.    This Case Is A Good Vehicle to Reconsider *Bondi* En Banc.

There is an additional reason this case is a good candidate for en banc review. Both the *Bondi* panel opinion and concurrence noted that Florida is currently considering a law that would reduce the age to purchase a firearm to 18, mooting the appeal in *Bondi. See* 2023 WL 2484818, at ** 2 n.8 & 14. Since the panel in *Bondi* noted that "several contingencies would need to occur" for that case to become moot, *id.* at *2 n.8, one of those contingencies *has* occurred, *see* H.B. 1543, The Florida Senate, https://bit.ly/3FOg96x (bill reported out of the committee on March 23, 2023) (last visited March 24, 2023).

Granting rehearing in this case will therefore mitigate the risk of *Bondi* becoming moot before the en banc Court can complete its review. The only complication present in this case is that the district court dismissed Plaintiffs' claims on jurisdictional grounds. But as Plaintiffs' have explained, they have standing to sue at least some of the Defendants, who include the licensing officials who would be responsible for acting on their applications, they did not need to submit futile applications before filing suit, and their claims were not mooted by the enactment of a statute that entitles Georgians over the age of 21 to carry without a license but does nothing to ease the restrictions on 18-to-21-year-olds challenged in this case. Br. of Pls.'-Appellants at 16–20; Reply Br. of Pls.'-Appellants at 2–6, 14–19, Doc. 21 (Feb. 17, 2023). Given the fundamental nature of the rights at stake, this Court should hear

this case en banc and, assuming it agrees that the district court's standing and mootness holdings were erroneous, reach the merits and rule in Plaintiffs' favor.

## CONCLUSION

The Court should hear this case in the first instance and reverse with instruction to enter judgment in Plaintiffs' favor.

Dated: March 24, 2023                  Respectfully submitted,

/s/David H. Thompson
David H. Thompson
Peter A. Patterson
William V. Bergstrom
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 220-9660
Fax: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of FED. R. APP. P. 35(b)(2) because this brief contains 3,745 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), 11th CIR. R. 32-4, 35-5(a)–(d), (j), and (k)

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: March 24, 2023          /s/David H. Thompson
                                     David H. Thompson

                                     *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on March 24, 2023. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: March 24, 2023                    /s/David H. Thompson
                                         David H. Thompson

                                         *Counsel for Plaintiffs-Appellants*